| | |
|---|---|
| **Debtor Name:** | **Davis Kitchen & Tile, LLC** |
| **UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA** | |
| **Case Number:**    26-bk-343 | **Date Filed:**    6/1/2026 |

## Subchapter V Chapter 11 Plan

| **Part 1** | Notices |
|---|---|

To Creditors and other parties in interest: Your rights may be affected by this Plan. You should read this plan carefully and discuss it with your attorney if you have one. If you oppose the Plan's treatment of your claim or any provision of this Plan, you or your attorney must timely file an objection to confirmation of this Plan

**Important Deadlines:**

**Holders of Record**. Any equity security holder whose claim is based on a security must be the holder of record of the security on or before **21 days** after the date that this Plan was filed with the Court.

**Objections.** Any objection to this Plan must be in writing and filed with the Court on or before **28 days** after the date that this Plan was filed with the Court or pursuant to any order or notice issued by the Court or Clerk.

**Ballots.** Each creditor in each impaired class listed herein that has an allowed claim is entitled to vote to accept or reject this Plan. A form ballot is attached hereto. Ballots must be mailed to the below address on or before **28 days** after the date that this Plan was filed with the Court, or pursuant to any order or notice issued by the Court or Clerk

Johnson Legal Services, PLLC
1049 Market Street
Weeling, WV 26003

If your claim is unimpaired by this Plan, you are not entitled to vote.  You are further notified if you have an impaired claim and fail to vote, your failure to vote may be deemed acceptance of the Plan and the Court may determine that this Plan may be consensually confirmed.

Creditors treated in the following Classes are not impaired under this Plan:

All other Classes are impaired under the Plan

**Confirmation Hearing.** The Court will set a confirmation hearing on further notice to parties in interest. The Court may limit notice of the Confirmation Hearing to parties that have filed an objection to the Plan or that have otherwise entered an appearance in the case and requested notice.  Unless otherwise ordered by the Court, only parties that have timely filed an objection to confirmation of this Plan may be heard at the scheduled Confirmation Hearing. In the absence of any timely filed objection, the Court may confirm this Plan without, or in advance of, the Confirmation Hearing.

**Administrative Expense Application Deadline.** Any party claiming an administrative expense priority pursuant to 11 U.S.C § 507(a)(2) and § 330(a), must file an application with the Court to have such administrative claim approved within **14 days** of the date of the Order that confirms this Subchapter V Chapter 11 plan.

**Rejection Claims**. A proof of claim arising from the rejection of an executory contract or unexpired lease must be filed no later than **28 days** after the date of the order confirming this Plan. Any claim not timely filed will be barred unless otherwise ordered by the Court.

**Effective Date**. Once confirmed, the Effective Date of this Plan is **45 days** after the date of the entry of the confirmation order. At the option of the Debtor, the Effective Date may be delayed if this Plan requires a necessary consent for implementation from a governmental or other material third-party. If such consents or approvals, if required, cannot be obtained on or before the Effective Date, the Debtor will file a notice of a delayed Effective Date with the Court.

**Objections to Claim**. Notwithstanding the treatment of any claim in any Part of Class herein, the Debtor reserves the right to object to the claim of any creditor, equity interest holder, or party in interest.

| **Part 2** | Brief History of the Business Operations of the Debtor |
|---|---|

Davis Kitchen & Tile, LLC (d/b/a DKT Retail) (the "Debtor") is a West Virginia domestic limited liability company organized on April 8, 2002, with a charter expiration date of April 8, 2052. The Debtor's principal office and registered agent address is 831 Venture Drive, Morgantown, West Virginia 26508. The Debtor is managed by Christopher Collins, the 85% owner of the Debtor.   The Debtor has been in existence since 1910.

The Debtor's business purpose as registered with the West Virginia Secretary of State is identified under NAICS code 2361 — Residential Building Construction, encompassing new single-family and multi-family housing as well as residential remodeling. The Debtor operates in the kitchen and tile remodeling sector, employing crews to perform contractor and installation work for residential customers in the Morgantown, West Virginia area and surrounding communities. The Debtor underwent a period of internal restructuring following the sale of the business to the Debtor's principal and the untimely death of the former owner who had contracted to remain in place for a period of years. Prior to filing the Chapter 11 bankruptcy petition, that internal restructuring was completed, however, the Debtor was behind on its  commercial lease and facing eviction. This Chapter 11 bankruptcy case was filed to stop that eviction process, cure existing defaults in the Debtor's commercial lease, and pay creditors of the bankruptcy estate in an orderly manner as provided for in this Plan.

| **Part 3** | Discharge of Debts & Injunction |
| --- | --- |

**Discharge:** The Debtor asserts that:

|  | The Debtor IS NOT eligible for a discharge in this case |
| --- | --- |
| X | The Debtor IS eligible to receive a discharge under subchapter V of Chapter 11 |

If this Plan is consensually confirmed, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d) of the Bankruptcy Code.

If the Plan is non-consensually confirmed, as soon as practicable after completion by the Debtor of all payments due within the first 3 years of the plan, or such longer period not to exceed 5 years as the Court may fix, unless the Court approves a written waiver of discharge executed by the Debtor, the Court shall grant the Debtor a discharge of all debts provided in § 1141(d)(1)(A) of the Bankruptcy Code, and all other debts allowed under § 503 of the Bankruptcy Code and provided for in the Plan, except any debt— (1) on which the last payment is due after the first 3 years of the Plan, or such other time not to exceed 5 years fixed by the court; or (2) of the kind specified in section 523(a) of the Bankruptcy Code, as applicable.

Unless otherwise specified herein, a claim against the Debtor or the Debtor's estate is discharged in this Plan regardless of whether a creditor has filed a proof of claim. However, this Plan may pay a creditor as specifically set forth herein notwithstanding the fact that the creditor did not file, or did not timely file, a proof of claim in this case.

**Release of Claims**. The consideration to be distributed under the Plan shall be in exchange for, and in complete satisfaction and release of, all claims against the Debtor or any of its assets or properties, including, without limitation, any claim accruing after the Petition Date and prior to the Effective Date.

**Injunction**. Except as otherwise expressly provided in this Plan or in any order confirming this Plan, Confirmation of this Plan creates an injunction against all claimants or persons who have held, hold or may hold claims that existed prior to the Effective Date, and such claimants and persons  are permanently enjoined on and after the Effective Date against the: (i) commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtor on account of claims against the Debtor, or on account of claims released by this Plan; (ii) enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or any property; or (iii) creation, perfection or enforcement of any encumbrance of any kind against the Debtor arising from a claim. This provision does not enjoin the prosecution of any claims that arise on or after the Effective Date nor does it enjoin the determination in the Bankruptcy Court of the amount of any claims that arose prior to the Effective Date. Claimants and parties asserting entitlement to payment of administrative claims incurred prior to the date of Confirmation shall be permanently enjoined from asserting any Claim against the Debtor or their retained assets based upon any act or omission, transaction or other activity that occurred prior to the Confirmation date, except as otherwise provided in the Plan, whether or not a proof of claim or interest was filed and whether or not such claim or interest is allowed under Section 502 of the Code.

**Third Party Releases**. Pursuant to Fed. R. Bankr. P. 3016(c), when a plan provides an injunction against conduct not otherwise enjoined by the Bankruptcy Code, such injunctions must be described in specific and conspicuous language and identify the entities that would be subject to the injunction.

| | |
|---|---|
| X | There are no Third-Party Releases in this Plan |
| | Third Party Releases are as follows: |

| Part 4 | Plan Payments and Length |
|---|---|

Plan Payments and Length:  The Debtor shall submit all or such portion of the future income or other future income of the Debtor to the Plan as is necessary for the execution of the Plan.  The monthly payments listed in this section are estimates of the Debtor's aggregate annual average cash flow, after paying operating expenses, living expenses and taxes (as applicable), and are based on the yearly projections provided by the Debtor in Part 18 of this Plan. The actual monthly payment amount may be different pursuant to the cyclical or irregular nature of the Debtor's business income and expenses, and the accuracy of the Debtor's projections.

| | |
|---|---|
| $27,380.00 | Estimated Average Monthly Payment |
| 60 | Length of Plan in Months. The length of this Plan begins on the Effective Date with a credit for pre-confirmation adequate protection payments, as applicable. |
| $1,642,800.00 | Total Estimated Plan Payments |

In addition to the Total Estimated Plan Payments stated above, the Debtor is dedicating the following property to pay claims under this Plan

| Property to Liquidate and Dedicate to Plan | Est. Gross Value | Est. Net Value |
|---|---|---|
| Deposit for Subchapter V Trustee | $1,000.00 | $1,000.00 |
| Refinance of Loan 9002 from First United Bank & Trust | | $133,574.51 |
| Refinance of Loan 9001 from First United Bank & Trust | | $118,056.54 |
| | | |
| | | |
| Total Additional Property Dedicated to Plan | | $252,631.05 |

| | |
|---|---|
| **$1,895,431.05** | **Total Plan Base** |

Other Provisions Affecting Total Plan Base: This is a pot plan and not a percentage payout plan.

### Summary of Total Payments Provided for in the Plan by Class

| Class | 5.1 | $28,500.00 | Administrative claims | | |
|---|---|---|---|---|---|
| | | $20,000.00 | 5.1.1 | Debtor's Attorney |
| | | $3,500.00 | 5.1.2 | Subchapter V Trustee |
| | | $5,000.00 | 5.1.3 | Accountant |
| | 5.2 | $428,851.37 | Priority Tax Claims | | |
| | | $252,822.34 | 5.2.1 | Internal Revenue Service |
| | | $176,029.03 | 5.2.2 | WV Tax Dept. |
| | 6.3 | $43,761.57 | Interest Rate Modification to Secured Debts | | |
| | | $43,761.57 | 6.3.1 | OnDeck |
| | 6.4 | $50,372.24 | Valued Secured Claims | | |
| | | $50,372.24 | 6.4.1 | Ford Motor Credit Company, LLC |
| | 6.8 | $390,966.04 | Extended Debts with Ballon Payments | | |
| | | $73,963.58 | 6.8.1 | 59 Payments on Loan 9002 to First United Bank & Trust |
| | | $65,371.41 | 6.8.2 | 59 Payments on Loan 9001 to First United Bank & Trust |
| | | $133,574.51 | 6.8.1 | Balloon Payment First United Bank & Trust No. 9002 |
| | | $118,056.54 | 6.8.2 | Balloon Payment First United Bank & Trust No. 9001 |
| | 7.1 | $824,911.33 | Undisputed General Unsecured Claims | | |
| | 7.3 | $127,863.92 | Cure / Maintenance of Unsecured Debt | | |
| | | $113,463.92 | 7.3.1 | WHLR-Pierpont Center LLC, |
| | | $14,400.00 | 7.3.2 | Secure Storage of Morgantown |

**$1,895,226.47 Total Paid Out of Plan Base**
**100.00% Estimated Distribution**

| Part 5 | Administrative Expenses and Priority Claims |
|---|---|

**5.1 Administrative Expenses:** The Debtor will pay, in full, the total amount of all administrative expenses upon the Plan's Effective Date to the extent that the Debtor has funds on hand to make such payments. To the extent that the Debtor does not have adequate funds on hand to pay such administrative expenses in full,  such administrative expenses claims are to be paid pro rata, concurrently with any ongoing secured debt payments and reasonable and necessary living expenses, as applicable. Funds are to be applied first to reasonable and necessary living expenses (as applicable), second to ongoing secured debt payments, ongoing domestic support obligations, and ongoing installment payments on any assumed leases or executory contracts, third to any domestic support obligation arrearage, and only then the fees of non-DSO Administrative Expense claim holders under 11 U.S.C. § 507(a)(2). Administrative expenses are to be paid, in full, before any Plan payment is applied to a non-DSO arrearage claim or before payment is applied to any other priority or unsecured debt.

As of the Date of the filing of this Plan, the Debtor anticipates incurring the following Administrative Expenses on or before the Effective Date:

| | Administrative Claim | Est. Amt. Owed |
|---|---|---|
| 5.1.1 | Debtor's Attorney | $20,000.00 |
| 5.1.2 | Subchapter V Trustee | $3,500.00 |
| 5.1.3 | Accountant | $5,000.00 |
| | Total Estimated Administrative Payments | $28,500.00 |

**5.2 Priority Tax Claims Under 11 U.S.C. § 507(a)(8) and Secured Tax Claims That Would Otherwise Meet the Description of § 507(a)(8).** The holder of a Priority Tax Claim Under 11 U.S.C. § 507(a)(8), and the holder of a Secured Tax Claim That Would Otherwise Meet the Description of § 507(a)(8), will receive on account of such claim regular installment payments in cash, (i) of a total value, as of the effective date of the Plan, equal to the allowed amount of such claim; (ii) over a period ending not later than 5 years from the date of the filing of the Debtor's bankruptcy petition, and (iii) in a manner not less favorable than the most favored non-priority unsecured claim provided for by the Plan (other than cash payments made to creditors under 11 U.S.C. § 1122(b)). Payments on tax claims shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Effective Date.

| | Priority Tax Claim | Est. Amt. Owed | % | Est. Paid In Plan |
|---|---|---|---|---|
| 5.2.1 | IRS* | 227,849.92 | 4.17% | $252,822.34 |
| 5.2.2 | WV Tax Department | 158,641.84 | 4.17% | $176,029.03 |
| 5.2.3 | | | | |
| 5.2.4 | | | | |
| | | Total Estimated Priority Tax Payments | | $428,851.37 |

*The IRS filed a priority claim in the amount of $227,849.92. Of this amount, $103,561.97 is estimated for unfiled returns from 2025 - 2026. The Debtor's 2025 tax return is on an extension and the Debtor anticipates that the estimated claim will be substantially reduced. The reduction in the priority claim will results in a larger pool of fund paid to general unsecured creditors

| Part 6 | Secured Claims |
|---|---|

Each holder of an allowed secured claim shall retain the lien securing such claim, whether the property subject to the lien is retained by the Debtor or transferred to another entity, to the extent of the allowed amount of such claim, until the secured portion of the claim is paid in full pursuant to the Plan. Each secured claim holder will received on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the Effective Date of this Plan, or at least the value of such holder's interest in the Bankruptcy Estate's interest in such property.

**6.3 Interest Rate Modification to Secured Debts:** For the secured claims listed in this section, the Debtor is proposing to modify the on-going interest rate payable to the secured creditor as follows. The Debtor reserves the right to object to On Deck's claim.

| | Secured Creditor | Collateral | $ Owed | % APR | Total Paid in Plan | $ Monthly |
|---|---|---|---|---|---|---|
| 6.3.1 | On Deck | All Assets | 36,184.00 | 7.75% | $43,761.57 | 729.36 |
| | | | Total Payments on Interest Rate Modifications to Secured Debts | | | $43,761.57 | 729.36 |

**6.4 Valued Secured Claims:** Secured Claims that are Subject to a Separate Motion or Adversary Proceeding Based on Valuation. This Plan does not value claims. To value a claim pursuant 11 U.S.C. 506, the Debtor must file and serve a separate motion pursuant to Fed. R. Bankr. P. 3012, 7004, 9014(b), or, as applicable, file an adversary proceeding under Fed. R. Bankr. P. 7001, or submit an agreed order to the court resolving value. The information provided below is for information purposes only, and the Debtor's valuation stated herein is subject to change, without the need to modify the plan, based on the resolution of any motion, adversary proceeding, or pursuant to the terms of an agreed order regarding valuation. The amount of the creditor's claim in excess of the Debtor's valuation for the collateral shall be treated with other general unsecured claims and paid pro rata. If an order is entered treating the claim as wholly unsecured then the creditor's lien will be avoided pursuant to 11 U.S.C. 506. Notwithstanding the requirement for a motion, the Debtor may value a claim pursuant to the information contained in the creditor's filed proof of claim.

| | Creditor | Collateral | $ Owed | $ Value | % APR | Total Paid in Plan | $ Monthly |
|---|---|---|---|---|---|---|---|
| 6.4.1 | Ford Motor Credit Company, LLC | 2023 Ford Transit Cargo Van | $55,743.42 | $41,650.00 | 7.75% | $50,372.24 | $839.54 |
| | | | | Total Payments on Valued Claims | | $50,372.24 | $839.54 |

**6.8. Modification of Secured Debt and Balloon Payments.** The debts listed below mature before the end of the Debtor's Chapter 11 plan and  the payment schedules for the below debts are modified to provide for 59 payments based on a 20-year amortization schedules at 7.75% with a balloon payment in month 60 of the confirmed plan. The payment schedule may be modified to allow for prepayments or for an earlier refinancing of the debts listed below.

| | Creditor | $ Owed | % Rate | $ Mo. 1-59 | $ Mo. 60 | Total Paid |
|---|---|---|---|---|---|---|
| 6.8.1 | First United Bank & Trust No. 9002 | 152,704.39 | 7.75 | 1,253.62 | 133,574.51 | 207,538.09 |
| 6.8.2 | First United Bank & Trust No. 9001 | 134,964.01 | 7.75 | 1,107.99 | 118,056.54 | 183,427.95 |

| Part 7 | Non-Priority Unsecured Claims |
|---|---|

**7.1 Undisputed General Unsecured Claims.** This is a pot plan and unsecured claims will be paid pro-rata.   Allowed non-priority claims that are not separately classified will be paid pro rata. Payment of any dividend will depend on the amount of allowed secured and priority claims, payments to separately designated classes, and the total amount of all allowed unsecured claims. No payment will be made on non-priority unsecured claims until unsecured priority claims are paid in full. If an unsecured creditor is listed below, that creditor does not need to file a proof of claim to be paid the amount listed; however, if an unsecured creditor is not listed below, or if a creditor disagrees with the amount listed below, the creditor must timely file a proof of claim to be paid under this Plan. The distribution to non-priority unsecured creditors also includes any under secured claim or avoided lien listed in Part 6. **The percentage distribution to unsecured creditors may be lowered based on timely filed claims and the percentage distribution estimated in this plan is the Debtor's best estimation based on known claims.**

The value as of the Effective Date of the Plan of property to be distributed in the Plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the Debtor was liquidated in Chapter 7 of the Bankruptcy Code on that date. A liquidation analysis is provided in Part 17 of this Plan.

|  | Unsecured, Non-Priority Creditor | Unsecured Claim | % in Ch. 7 |  | % in Plan |
|---|---|---|---|---|---|
| 7.1.1 | American Express | $5,963.43 | 0.00% |  | 100.00% |
| 7.1.2 | American Funds | $10,876.17 | 0.00% |  | 100.00% |
| 7.1.3 | Arrow Structural Engineering | $1,752.50 | 0.00% |  | 100.00% |
| 7.1.4 | Capital One | $430.15 | 0.00% |  | 100.00% |
| 7.1.5 | CHARLESTON FILTER SERVICE INC | $162.45 | 0.00% |  | 100.00% |
| 7.1.6 | Cincinnati Insurance Company | $4,325.00 | 0.00% |  | 100.00% |
| 7.1.7 | CITY OF MORGANTOWN | $2,573.03 | 0.00% |  | 100.00% |
| 7.1.8 | Clark Retail Tile | $890.00 | 0.00% |  | 100.00% |
| 7.1.9 | Commercial Lighting | $580.49 | 0.00% |  | 100.00% |
| 7.1.10 | COMMUNICATIONS PLUS | $162.32 | 0.00% |  | 100.00% |
| 7.1.11 | Croston Countertop | $860.00 | 0.00% |  | 100.00% |
| 7.1.12 | Dinsmore & Shohl LLP | $1,000.00 | 0.00% |  | 100.00% |
| 7.1.13 | Dreamline Shower Doors | $3,946.39 | 0.00% |  | 100.00% |
| 7.1.14 | Ed Davis | $122,773.00 | 0.00% |  | 100.00% |
| 7.1.15 | Edmund J. Rollo Attorneys at Law | $2,812.50 | 0.00% |  | 100.00% |
| 7.1.16 | Estlack | $31,967.00 | 0.00% |  | 100.00% |
| 7.1.17 | Express Employment | $3,163.00 | 0.00% |  | 100.00% |
| 7.1.18 | Ferguson Enterprises, Inc. #142 | $22,006.63 | 0.00% |  | 100.00% |
| 7.1.19 | FIERST DIST | $7,677.92 | 0.00% |  | 100.00% |
| 7.1.20 | Ford Motor Credit | $53,193.31 | 0.00% |  | 100.00% |
| 7.1.21 | Freeman Retail Kitchen | $16,404.26 | 0.00% |  | 100.00% |
| 7.1.22 | HAPPY FLOORS | $9,119.44 | 0.00% |  | 100.00% |
| 7.1.23 | Headway Capital | $61,362.00 | 0.00% |  | 100.00% |
| 7.1.24 | Heffernan | $20,124.43 | 0.00% |  | 100.00% |
| 7.1.25 | Lopez Flooring | $17,559.94 | 0.00% |  | 100.00% |
| 7.1.26 | MAIL & MORE, INC | $198.27 | 0.00% |  | 100.00% |
| 7.1.27 | Maniscalco | $1,833.20 | 0.00% |  | 100.00% |
| 7.1.28 | Mantra Cabinetry | $1,577.16 | 0.00% |  | 100.00% |
| 7.1.29 | Menards | $30,314.00 | 0.00% |  | 100.00% |
| 7.1.30 | MHMC Physician Services | $120.00 | 0.00% |  | 100.00% |
| 7.1.31 | MORGANTOWN POWER EQUIPMENT | $848.38 | 0.00% |  | 100.00% |
| 7.1.32 | Mountain Top Glass | $1,527.61 | 0.00% |  | 100.00% |
| 7.1.33 | Mountaineer Glass & Mirror | $1,831.56 | 0.00% |  | 100.00% |
| 7.1.34 | MOUSER CUSTOM CABINETRY | $71,332.63 | 0.00% |  | 100.00% |
| 7.1.35 | MT STATE TRAILER RENTAL INC | $720.80 | 0.00% |  | 100.00% |
| 7.1.36 | NIC Group Inc | $26,300.00 | 0.00% |  | 100.00% |
| 7.1.37 | OC CLUSS | $803.96 | 0.00% |  | 100.00% |

| | | | | | |
|---|---|---|---|---|---|
| 7.1.38 | PA Department of Revenue | $204.19 | 0.00% | | 100.00% |
| 7.1.39 | PRATT & LARSON CERAMICS INC | $9,490.13 | 0.00% | | 100.00% |
| 7.1.40 | PREFERRED SURFACES | $18,413.70 | 0.00% | | 100.00% |
| 7.1.41 | Premier Granite & Stone | $6,075.00 | 0.00% | | 100.00% |
| 7.1.42 | Przybylinski Kitchen | $46,130.00 | 0.00% | | 100.00% |
| 7.1.43 | Reneau Retail Cabinets | $5,345.19 | 0.00% | | 100.00% |
| 7.1.44 | Royal Glass | $2,795.00 | 0.00% | | 100.00% |
| 7.1.45 | Schulman Lobel LLP | $4,000.00 | 0.00% | | 100.00% |
| 7.1.46 | Internal Revenue Service | $44,645.79 | 0.00% | | 100.00% |
| 7.1.47 | Sheffield Financial | $0.00 | 0.00% | | 100.00% |
| 7.1.48 | SHERWIN-WILLIAMS | $247.03 | 0.00% | | 100.00% |
| 7.1.49 | Staples | $1,500.68 | 0.00% | | 100.00% |
| 7.1.50 | STATE ELECTRIC | $1,132.02 | 0.00% | | 100.00% |
| 7.1.51 | Synchrony Bank/Lowes | $22,610.77 | 0.00% | | 100.00% |
| 7.1.52 | Tammy Dalton | $641.25 | 0.00% | | 100.00% |
| 7.1.53 | UNEMPLOYMENT COMPENSATION DIV | $12,146.77 | 0.00% | | 100.00% |
| 7.1.54 | US CABINET DEPOT | $21,990.05 | 0.00% | | 100.00% |
| 7.1.55 | Wellborn Cabinet, Inc | $19,159.43 | 0.00% | | 100.00% |
| 7.1.56 | Whipkey Flooring | $10,000.00 | 0.00% | | 100.00% |
| 7.1.57 | Fierst Distributing Company | $8,605.06 | 0.00% | | 100.00% |
| 7.1.58 | WOOD-MODE INCORPORATED | $29,988.44 | 0.00% | | 100.00% |
| 7.1.59 | WV Offices of the Insurance Commissioner | $6,604.48 | 0.00% | | 100.00% |
| 7.1.60 | Ford Motor Credit Company, LLC | $14,093.42 | | | |
| 7.1.61 | | | | | |
| 7.1.62 | | | | | |
| 7.1.63 | | | | | |
| 7.1.64 | | | | | |
| 7.1.65 | | | | | |
| | Totals | $824,911.33 | | | |

**7.2 Subordinated Non-Priority Debts:** The following debts are owed to an insider of the Debtor and are subordinated to general unsecured claims. The debts listed below will only be paid during the term of the Chapter 11 plan if all other creditors are paid in full.

| | Subordinated, Unsecured, Non-Priority Creditor | Asserted Claim |
|---|---|---|
| 7.2.1 | Amare Equity, LLC | $169,784.66 |
| 7.2.2 | Christopher Collins | $249,265.16 |
| 7.2.3 | Cliffside, LLC | $314,631.95 |

**7.3 Assumption of Executory Contracts:** The Debtor proposes to assume the following contracts and pay amounts due in the ordinary course of business. **The monthly expense for the payment of the on-going rent for the commercial lease and storage lease are included as on-going expenses in the Debtor's attached operating budget. The Debtor will promptly cure the arrearages stated below.**

| Lessor | Contract | Arrearage |
|---|---|---|

| | | | | |
|---|---|---|---|---|
| 7.3.1 | WHLR-Pierpont Center LLC, | 831 VENTURE DRIVE, Morgantown, WV 26508 | | $113,463.92 |
| 7.3.2 | Secure Storage of Morgantown | Storage Unit | | $14,400.00 |
| | | | Total Arrearages Paid in Plan | $127,863.92 |

| | Unsecured Creditor | Contract | Current Monthly | # Months | Total Paid in Plan |
|---|---|---|---|---|---|
| 7.3.1 | WHLR-Pierpont Center LLC, | Commercial Lease - Ongoing Expense Included in Monthly Operating Budget | | | $0.00 |
| 7.3.2 | Secure Storage of Morgantown | Storage Lease - Ongoing Expense Included in Monthly Operating Budget | | | $0.00 |
| | | | | Total Ongoing Payments | $0.00 |

**8.1 Non-Standard Treatment:** The Debtor proposes the following non-standard treatment:

| Part 9 | Equity Interests | |
|---|---|---|
| | Equity Interest Holder | Treatment in Plan | Total Paid in Plan |
| 9.1 | Christopher Collins 85% Owner | Retain interest | $0.00 |
| 9.2 | Andrea Sookhoo 15% Owner | Retain interest | $0.00 |

| Part 10 | Other Litigation Claims and Objections to Claims |
|---|---|

To the extent that a litigation claim is not set forth in one of the above Parts or Classes, the Debtor makes the following representation regarding litigation claims. The fact that the Debtor may list Other Litigation Claims in this Part does not constitute a waiver of any unlisted claim that the Debtor may have, does not establish by representation or issue or claim preclusion any part of the merits of such a claim, and the validity or invalidity of such a claim is a valid not grounds upon which the litigation defendant may object to the confirmation of this Plan. Except as otherwise explicitly provided in this Plan, nothing in the Plan shall be deemed to be a waiver or relinquishment of any claim, cause of action, account receivable, right of setoff, or other legal or equitable right or defense that the Debtor or the Bankruptcy Estate may have under any provision of the Bankruptcy Code or any applicable non-bankruptcy law.

| X | The Debtor does not intend to pursue Other Litigation Claims and/or is currently unaware of the existence of such claims. |
|---|---|

| Part 11 | Vesting of Property of the Estate & Binding Effect of Plan |
|---|---|

If this Plan is consensually confirmed, property of the estate will vest in the Debtor upon entry of the order confirming this Plan, unless otherwise specifically provided for in this Plan or in the order confirming this Plan.  After confirmation of this Plan, the property dealt with by this Plan is free and clear of all claims and equity interests of creditors, equity security holders, and of general partners in the Debtor.

If this Plan is not consensually confirmed, property of the estate includes, in addition to the property specified in § 541 of the Bankruptcy Code, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under Chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, this Plan, or the order confirming this Plan, the Debtor shall remain in possession of all property of the estate and the property of the estate.

If this Plan is confirmed, its provisions bind the Debtor and all creditors, regardless of whether any such creditor accepts or rejects this Plan. The rights and obligations of any entity named for referred to in this Plan will be binding on and will inure to the benefit of the successors or assigns of such entity.

| **Part 12** | Identity and Affiliations of Directors, Officers, Voting Trustees, Participating Affiliates, or Successors Proposed to Serve After Confirmation of the Plan |
|---|---|

Following confirmation of this Plan, the Debtor will continue to be in possession of the estate and to continue operations with the same management structure as existed before this bankruptcy case was filed.

| | Name | Position | Gross Comp. |
|---|---|---|---|
| 12.1.1 | Chris Collins | 85% Owner / CEO | |

| **Part 13** | Governmental Regulatory Commissions & Rate Changes |
|---|---|

| X | There is no governmental regulatory commission with jurisdiction, after confirmation of this Plan, that needs to approve rate changes, if any, that are provided for in this Plan. |
|---|---|

| **Part 14** | Retiree Benefits |
|---|---|

| X | There are no retiree benefits to be treated under this Plan. |
|---|---|

| **Part 15** | Post-Petition Domestic Support Obligations |
|---|---|

| X | Not Applicable |
|---|---|

| **Part 16** | Other Provisions |
|---|---|

**Controlling Law.** Unless a rule of law or procedure is supplied by federal law, the laws of the State of West Virginia govern this Plan, except as otherwise specifically provided for in this Plan.

**Default**. No default in the performance of this Plan shall automatically result in the termination of the Plan or constitute a revocation of the confirmation order. Unless otherwise specified in the Plan, if any party in interest believes that the Debtor or its reorganized entity is in default of any requirement of this Plan, such party shall provide written notice of such claimed default to the Debtor or it reorganized entity and to Debtor's counsel before filing a motion with the Bankruptcy Court regarding the alleged noncompliance with, and enforcement of, the terms of this Plan.

**Good Faith.** The Debtor represents that it is within the Debtor's ability to carry out this Plan and that the Plan is submitted in good faith and not by any means forbidden by law.

**Entire Agreement**. Except as otherwise indicated, on the Effective Date, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations with respect to the subject matter of the Plan, all of which will have become merged and integrated into the Plan on the Effective Date.

**Modification of Plan Before Confirmation.** The Debtor may modify this Plan at any time before it is confirmed, or modify the Plan through the confirmation order. However, the Bankruptcy Court may require that there be a revoting on the Plan based on the Plan as modified. Otherwise, the holder of a claim or interest that has accepted or rejected the Plan is deemed to have accepted or rejected the Plan as modified, unless otherwise ordered by the Court.

**Professional Fees After Confirmation.** In the period after the date of Confirmation, but before closing of the case, the Debtor may continue to utilize the services of professional persons whose employment was previously approved by the Bankruptcy Court, in completing the administration of the case and in the consummation and performance of the Plan and, if necessary, the Debtor may employ additional professional persons to render services in and in connection with the case. With respect to services rendered and expenses incurred in or in connection with the case by any professional person during such period, the professional person may render periodic billing thereafter to the applicable disbursing agent who shall promptly pay the same, but each such payment shall be subject to review and approval by the Court as to the reasonableness thereof.

**Retention of Jurisdiction.** Pursuant to this Plan, the Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of this Plan; (ii) to rule on any modification of this Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

**Revocation**. The Debtor reserves the right to revoke and withdraw the Plan prior to the entry of the Confirmation Order. If the Debtor revoke or withdraw the Plan, the Plan shall be deemed null and void, and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor, any other person, or to prejudice in any manner the rights of such parties in any further proceedings involving the Debtor.

**Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**Statement of Need for Further Reorganization.** The Debtor asserts that – to the extent that liquidation or the need for further reorganization not is specifically set forth in this Plan – confirmation of this Plan is not likely to be followed by the liquidation, or the need for further financial reorganization.

**Successors and Assigns**. The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each entity.

| Part 17 | Liquidation Analysis |
|---|---|

| Asset | Value | Costs of Sale | Secured Debt | Exempt. | Equity | Ch. 7 TE Fees | Net Value |
|---|---|---|---|---|---|---|---|
| First United Bank & Trust Account No.: xxxxxx0062 | $2,989 | $298.90 | | | $2,690.10 | $672.53 | $2,017.58 |
| First United Bank & Trust Account No.: xxxxxx7779 | $0 | $0.00 | | | $0.00 | $0.00 | $0.00 |
| Cabinetry in Warehouse to be installed. | $68,461 | $6,846.10 | | | $61,614.90 | $6,330.75 | $55,284.16 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Work in progress ( Likely $0.00 in Chapter7) | $445,361 | $44,536.10 | $323,852 | | $76,972.90 | $23,291.25 | $53,681.66 |
| Office fixtures | $31,000 | $3,100.00 | | | $27,900.00 | $3,540.00 | $24,360.00 |
| Office equipment, including all computer equipment and communication systems equipment and software | $10,550.00 | $1,055.00 | | | $9,495.00 | $1,699.50 | $7,795.50 |
| 2023 Ford Transit | $41,650 | $4,165.00 | $55,743 | | $0.00 | $6,037.15 | $0.00 |
| 2023 Griffen Trailer (Dump Trailer) | $10,000 | $1,000.00 | | | $9,000.00 | $1,650.00 | $7,350.00 |
| Forklift | $3,000 | $300.00 | | | $2,700.00 | $2,700.00 | $0.00 |
| Drywall Sander, Floor Scrubber, Ladders, MK Hand Polisher, Nailers, Paint Sprayers, Tile Scribe Cutters, Water Saws | $5,800 | $580.00 | | | $5,220.00 | $1,272.00 | $3,948.00 |
| Goodwill $255,000 (not an asset in liquidation under Ch. 7) | $0 | $0.00 | | | $0.00 | $0.00 | $0.00 |
| | | $0.00 | | | $0.00 | $0.00 | $0.00 |

| | |
|---|---|
| Net Liquidation Value of Debtor in Chapter 7 | $154,436.89 |
| Less Priority and Administrative Claims | $457,351.37 |
| Total Payable to Unsecured Claims in Chapter 7 | **$0.00** |
| Total Payable to Unsecured Claims in this Chapter 11 Plan | $824,911.33 |

**Part 18** Projections RE: Ability to Make Payments : See Attachment 1

**Part 19** Signatures

Respectfully Submitted,

Davis Kitchen & Tile, LLC

By:

CHRISTOPHER COLLINS
Plan Proponent

/s/ Ryan W. Johnson

Ryan Johnson, Attorney for the Plan Proponent

Johnson Legal Services, PLLC

1049 Market Street

Wheeling, WV 26003

WV Bar No. 14178

304-212-4950

Johnson.legal.services.pllc@gmail.com

www.JohnsonLegalServicesPLLC.com

Debtor Name:          Davis Kitchen & Tile, LLC

UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

Case No.          26-bk-343

**Ballot for Accepting or Rejecting Plan of Reorganization**

The Debtor filed a plan of reorganization dated June 1, 2026. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claim or equity interest has been classified in the Plan. If you hold claims or equity interests in more than one class, you may submit a vote for each class.

Your ballot is due on or before:          June 29, 2026
(or as otherwise ordered by the
Court)

For your ballot to be counted, you must file your ballot at the following address – DO NOT file your ballot with the Bankruptcy Clerk:

Johnson Legal Services, PLLC
1049 Market Street
Wheeling, WV 26003

If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.

**Name of Creditor or Equity Interest Holder:** _____

Part/Class of the Plan where your claim/interest is treated: _____

Check one box only:

Accepts the plan: _____

Rejects the plan: _____

Dated: _____

Print or Type Name: _____

Signature: _____

Title (if a business entity): _____

Address: _____

_____

_____