## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**In re:**

**DAVIS KITCHEN & TILE, LLC,**

　　　　Debtor.

Case No. 1:26-bk-00343

Chapter 11, Subchapter V

## DEBTOR'S MOTION TO ASSUME COMMERCIAL LEASE
## PURSUANT TO 11 U.S.C. § 365

Davis Kitchen & Tile, LLC, (the "Debtor"), by undersigned counsel, respectfully moves this Court pursuant to 11 U.S.C. § 365(a), Federal Rules of Bankruptcy Procedure 6006 and 9014, and the Local Rules of this Court, for entry of an order authorizing the Debtor to assume that certain commercial Shopping Center Lease dated May 5-6, 2022 (the "Lease"), between the Debtor, as Tenant, and WHLR-Pierpont Center, LLC ("WHLR" or "Landlord"), as Landlord, for the commercial premises located at Store Number 3, Pierpont Centre Shopping Center, 831 Venture Drive, Morgantown, West Virginia 26508 (the "Premises"). In support thereof, the Debtor states as follows:

### I. PRELIMINARY STATEMENT

The Debtor filed this Chapter 11 Subchapter V petition on May 14, 2026, the same date that entry of an Agreed Order Regarding Eviction and Damages (the "Eviction Order") was entered in the Monongalia County Circuit Court. The Lease remains unexpired as the eviction order did not concomitantly terminate the lease: its five-year term runs through May 31, 2027. Assumption of the Lease and the curing of its defaults is the main purpose of the Debtor' bankruptcy filing. The Debtor's ability to assume the Lease and remain in operation at the Premises is not merely desirable; it is essential to the Chapter 11 plan.

The Debtor seeks authority to assume the Lease, proposes to cure all monetary defaults through a plan of reorganization. Assumption is an exercise of sound business judgment and is essential to successful reorganization.

## II. BACKGROUND

### A. The Debtor and Its Business Operations

1. Davis Kitchen & Tile, LLC is a West Virginia limited liability company organized and operating in Morgantown, West Virginia. The Debtor is engaged in the retail sale of kitchen cabinets, floor coverings, related fixtures, and design services, operating under the trade name "Davis Kitchen & Tile." The Debtor's principal place of business is the Premises at 831 Venture Drive, Store Number 3, Pierpont Centre Shopping Center, Morgantown, West Virginia 26508—the very premises at issue in this motion.

2. The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on May 14, 2026, electing to proceed under Subchapter V. The Debtor is a small business debtor as defined by 11 U.S.C. § 101(51D), with noncontingent liquidated debts below the statutory threshold. The Debtor is operating its business and managing its financial affairs as debtor-in-possession.

3. The Debtor's business at the Premises serves the Morgantown, West Virginia community. The kitchen and tile showroom requires a physical location accessible to customers, and the Premises at Pierpont Centre Shopping Center provides that visibility, foot traffic, and accessibility. No alternative location has been identified that would preserve the Debtor's customer base and operational continuity. The Lease is essential to the Debtor's regoranization.

### B. The Lease

4. On or about May 5-6, 2022, the Debtor executed the Lease with WHLR-Pierpont Center, LLC. The Lease is a standard commercial shopping center lease for Store Number 3 at Pierpont Centre Shopping Center, 601 Venture Drive (831 Venture Drive as the store's address), Morgantown, West Virginia 26508, consisting of approximately 2,646 square feet of leasable area. The key economic terms of the Lease are as follows:

| Term/Provision | Details |
| --- | --- |
| Premises | Store No. 3, Pierpont Centre Shopping Center, 831 Venture Drive, Morgantown, WV 26508; 2,646 sq. ft. |
| Lease Term | Five (5) years; Commencement Date: June 1, 2022; Expiration: May 31, 2027 |

| Term/Provision | Details |
|---|---|
| Permitted Use | Sale of kitchen cabinets, floor coverings, and related items only |
| Minimum Rent – Yrs. 1-2 | $3,655.89/month ($43,870.68/year) |
| Minimum Rent – Yr. 3 | $3,766.14/month ($45,193.68/year) |
| Minimum Rent – Yr. 4 | $3,878.60/month ($46,543.14/year) |
| Minimum Rent – Yr. 5 | $3,995.46/month ($47,945.52/year) |
| Additional Rent (CAM/Tax/Insurance) | $564.48/month ($6,773.76/year) estimated |
| Total Monthly Obligation | Approx. $4,220–$4,560/month |
| Security Deposit | $2,646 on file |
| Guarantor | Christopher Collins (personal guaranty, Exhibit E to Lease) |

5.   The Lease is governed by West Virginia law (Lease § 34(b)). The Lease contains a personal guaranty (Exhibit E) executed by Christopher Collins ("Guarantor"), the Debtor's CEO and owner, providing unconditional personal guaranty of all Tenant obligations.

6.   Section 25 of the Lease sets forth the default and remedies provisions. Section 25(b) provides Landlord with multiple distinct remedies upon default, critically distinguishing between (i) re-entry and repossession *"without terminating this Lease"* (Section 25(b)(ii)), and (ii) election to terminate *"upon not less than five (5) days written notice to Tenant"* (Section 25(b)(iii)). These are mutually exclusive and independently operative remedies.

7.   Section 25(a)(v) of the Lease purports to designate a bankruptcy filing as an event of default. This provision is void and unenforceable as a matter of federal law pursuant to 11 U.S.C. § 365(e)(1), which prohibits lease modification or termination based solely on the commencement of a bankruptcy case.

### C. The State Court Litigation and Eviction Order

8.   In 2025, WHLR commenced a civil action in the Circuit Court of Monongalia County, West Virginia, styled *WHLR-Pierpont Center LLC v. Davis Kitchen & Tile, LLC, Christopher Collins*, Case No. CC-31-2025-C-274, before Judge Michael D. Simms, seeking eviction and damages arising from the Debtor's defaults under the Lease.

9. On May 4, 2026, the state court held a hearing on WHLR's pending Motion for Judgment on the Pleadings as to Eviction. It was undisputed that the Debtor had defaulted on its payment obligations under the Lease. The court ordered the parties to confer in good faith to reach a resolution..

10. On May 14, 2026, the state court entered the Agreed Order Regarding Eviction and Damages (the "Eviction Order"). The Eviction Order, a copy of which is attached hereto as Exhibit A, awarded: (a) judgment in favor of WHLR *"for the possession of the leased commercial premises"*; (b) ordered the Debtor to vacate within seven (7) days; (c) directed the Clerk to issue a writ of possession upon WHLR's future request; and (d) entered a money judgment of $113,463.92 against the Debtor and Christopher Collins jointly.

11. Critically, the Eviction Order: (a) did not declare the Lease terminated; (b) did not constitute or purport to be the five-day written termination notice required by Lease Section 25(b)(iii); (c) did not result in issuance or execution of any writ of possession; and (d) expressly noted that the Debtor *"remain[s] obligated under the lease"*—language directly referencing the Lease's surrender obligations under Section 17(a), which apply upon termination, confirming the court understood the Lease to remain operative.

12. The Eviction Order awarded WHLR its possessory remedy under Lease Section 25(b)(ii)—re-entry and repossession *"without terminating this Lease."* WHLR never invoked the separate termination remedy under Lease Section 25(b)(iii), which expressly requires five days' written notice to the Tenant. No such notice was ever served.

**D. The Bankruptcy Filing**

13. On May 14, 2026, the Debtor filed its Chapter 11 Subchapter V voluntary petition in this Court, Case No. 1:26-bk-00343. The automatic stay under 11 U.S.C. § 362(a) became immediately effective upon filing.

14. Following the filing of the bankruptcy petition, upon information and belief: (a) no writ of possession was requested by WHLR; (b) no writ of possession was issued by the Circuit Court Clerk; (c) no writ of possession was executed; (d) no five-day written termination notice under Lease Section 25(b)(iii) was served; and (e) no other action was taken that would have completed the termination of the Lease under applicable state law.

## III. ARGUMENT

### A. The Lease Is an Unexpired Lease Eligible for Assumption Under 11 U.S.C. § 365

#### 1. The Lease Has Not Expired by Its Own Terms

15.  The threshold requirement for assumption under 11 U.S.C. § 365(a) is that the lease be "unexpired" as of the order for relief. The Lease commenced on June 1, 2022, with a five-year original term. It is scheduled to expire on May 31, 2027. As of the petition date—May 14, 2026—the Lease has over twelve months remaining on its original term. The Lease is unexpired by its own contractual terms..

#### 2. The Lease Was Not Terminated Before the Petition Date

16.  Under 11 U.S.C. § 365(c)(3), a trustee or debtor-in-possession may not assume a lease that has been "terminated under applicable nonbankruptcy law prior to the order for relief." The critical question is whether the Eviction Order terminated the Lease under applicable West Virginia law. The answer is no, for multiple independent reasons.

#### (a)  The Lease's Own Termination Mechanism Was Never Invoked.

17.  The Lease expressly provides a specific, exclusive mechanism for lease termination. Section 25(b)(iii) requires that WHLR "elect to terminate this Lease upon *not less than five (5) days written notice* to Tenant." (Lease § 25(b)(iii) (emphasis added).) This is a condition precedent to lease termination under the parties' own contract. It does not appear that no such notice was ever served.

18.  Section 25(b) provides WHLR with two distinct and mutually exclusive remedies upon default: (i) re-entry and repossession "without terminating this Lease" (Option (ii)); or (ii) termination upon five days' written notice (Option (iii)). The Eviction Order granted WHLR the possessory remedy—judgment "for the possession" of the Premises. This language maps precisely onto Section 25(b)(ii)'s possessory remedy, which the Lease itself declares operates "without terminating" the Lease. WHLR elected the possessory path, not the termination path. The Lease was not contractually terminated.

19.  West Virginia courts enforce contractual provisions governing landlord remedies. Where a commercial lease specifies procedural requirements for termination—including notice requirements—those requirements are conditions precedent that must be satisfied before

termination is effective. WHLR's failure to serve the contractually required five-day written notice renders any purported termination contractually ineffective, independent of any other analysis.

### (b)  The Eviction Order Awards Possession, Not Termination.

20.   The Eviction Order's operative language is specifically limited to possession: it "AWARDS JUDGMENT in favor of Plaintiff WHLR-Pierpont Center, LLC, for the *possession* of the leased commercial premises." (Eviction Order at 1 (emphasis added).) Nowhere does the Eviction Order declare the Lease terminated, state that the Lease term is at an end, or cite Lease Section 25(b)(iii)'s termination provision. Under well-established bankruptcy law, a judgment for possession and a lease termination are legally distinct events. *See, e.g., In re Jerusalem, Rest.*, 6:18-bk-010652018 Bankr. LEXIS 4279 at *5 (Bankr. M.D. Fla. July 12, 2018) (noting that the state court final judgment awarded possession and because the debtor filed bankruptcy before the Clerk could issue a writ of possession, the lease was subject to assumption in bankruptcy because it had not terminated: "Because one of the options allows a landlord to take possession of the property without terminating the lease, the entry of a final judgment of possession or writ of possession alone does not terminate a lease").

21. The Eviction Order itself demonstrates that the Lease remained operative at the time of entry. The court noted that the Debtor "remain[s] obligated under the lease to cooperate with Plaintiff, to surrender possession of the premises, and to leave the premises in the condition as required by the lease." This language directly references the Lease's ongoing obligations— including Section 17(a)'s surrender requirements—confirming the state court understood the Lease to remain a live, operative contract. A terminated lease cannot impose ongoing obligations.

## B. The Requirements of 11 U.S.C. § 365(b)(1) Are Satisfied

22.   Because the Lease is in default, assumption requires compliance with 11 U.S.C. § 365(b)(1), which mandates: (a) cure of all monetary defaults or provision of adequate assurance of prompt cure; (b) compensation for actual pecuniary loss to the other party; and (c) adequate assurance of future performance. The Debtor addresses each requirement in turn.

### *1. Cure of Monetary Defaults*

23.   The parties have stipulated in the state court proceeding that the rent arrearage as of May 14, 2026 is $113,463.92. This amount, which includes accumulated base rent, additional rent

(CAM, taxes, insurance), late charges, and related amounts, constitutes the primary monetary default under the Lease. The Debtor acknowledges this obligation and proposes to cure it through the Subchapter V plan of reorganization, which was filed on May 31, 2026 (Document No. 53), which includes the on-going rental payment plus $113,463.92 awarded by the Circuit Court.

### 2. Compensation for Actual Pecuniary Loss

24.   Section 365(b)(1)(B) requires compensation for "any actual pecuniary loss to such party resulting from such default." The $113,463.92 arrearage judgment encompasses the Landlord's stipulated damages from the Debtor's monetary defaults through the petition date. Post-petition rent obligations constitute administrative expenses payable under 11 U.S.C. § 365(d)(3) and must be paid in Chapter 11.

### 3. Adequate Assurance of Future Performance

25.   Section 365(b)(1)(C) requires adequate assurance of future performance under the Lease. "Adequate assurance" does not require absolute certainty:

> **"Adequate" Assurance Suffices**
>
> In each instance, "adequate assurance" that the action will be taken is a substitute for the immediate taking of the action. There is no general definition of the term "adequate assurance." Its meaning is left to be developed based upon the facts and circumstances of each case. It must simply appear that the rent will be paid and other lease obligations met. In determining adequate assurance of future performance, courts have considered some of the following factors: the debtor's payment history; presence of a guarantee; presence of a security deposit; evidence of profitability; a plan which would earmark money exclusively for the landlord; the general outlook in the debtor's industry; and whether the unexpired lease is at, or below, the prevailing rate. The term, however, has some flexibility. In particular, because in an appropriate case it is possible for the cure or compensation for loss to be something other than immediate cash payment, adequate assurance may be of something other than the availability of cash to cure or compensate.

3 *Collier on Bankruptcy* ¶ 365.06[3][a]

26.     The Debtor will demonstrate adequate assurance of future performance by commencing payments on the lease post-petition and, with court approval, including additional sums each month to begin to cure the lease's existing default. More specifically:

**(a) Ongoing Business Operations:** The Debtor continues to operate its kitchen cabinet and tile business at the Premises and has an established customer base in the Morgantown, West Virginia area. The Debtor generates revenue from retail sales and installation projects sufficient to support ongoing lease obligations going forward.

**(b) Cash Flow Projections:** The Debtor filed detailed monthly cash flow projections as Exhibit 53-1 to the Plan (Doc. 53-1, filed May 31, 2026). Those projections demonstrate total operating income of approximately $137,939 per month, with rent budgeted at $5,221.08 per month as a fixed overhead expense, supporting the Debtor's ability to pay all ongoing lease obligations through the remaining lease term ending May 31, 2027, while simultaneously funding the 60-month plan.

**(c) Plan of Reorganization:** The Debtor filed its Subchapter V Chapter 11 Plan of Reorganization on May 31, 2026 (Doc. 53). The Plan provides for assumption of the Lease at Section 7.3.1, with the $113,463.92 arrearage classified as a cure/maintenance obligation paid over the 60-month plan term. The monthly rent of $5,221.08 is included as an ordinary ongoing operating expense in the Debtor's budget. The Plan projects total payments of $1,895,431.05, funded by average monthly income of $30,145 after expenses, providing a concrete and funded mechanism for full satisfaction of all lease obligations.

**(d) Personal Guaranty of Christopher Collins:** Christopher Collins, as the Debtor's owner and CEO, remains personally liable under the Guaranty. Collins's continued personal commitment to the Debtor's operations and obligations provides additional assurance of performance to WHLR.

**(e) Post-Petition Rent Payments:** The Debtor is obligated under 11 U.S.C. § 365(d)(3) to timely perform all lease obligations from the petition date pending assumption or rejection. The Debtor represents that it will pay all post-petition rent as it comes due, beginning with the June 1, 2026 payment.

27.  For purposes of shopping center leases specifically, 11 U.S.C. § 365(b)(3) provides that adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance of the source of rent and other consideration due under such lease, that any percentage rent due under such lease will not decline substantially, that assumption and

any assignment of such lease will be subject to applicable provisions of the lease, and that assumption will not breach any provision applicable to tenants of the shopping center. The Debtor satisfies these requirements through continued retail operations consistent with the Permitted Use under the Lease (kitchen cabinets and related items), and the proposed cure and ongoing payment obligations.

**C. Assumption of the Lease Reflects the Sound Business Judgment of the Debtor**

28.  The decision to assume or reject an executory contract or unexpired lease is governed by the "business judgment" standard. See *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),* 4 F.3d 1095, 1099 (2d Cir. 1993) (explaining that the court's role in the assumption/rejection process "as [one of] an overseer of the wisdom with which the bankruptcy estate's property is being managed by the trustee or debtor-in-possession, and not, as it does in other circumstances, as the arbiter of disputes between creditors and the estate.").

29.  Assumption of the Lease reflects sound business judgment for the following reasons:

**(a)  The Lease Is the Debtor's Primary Asset.** The Premises at Pierpont Centre Shopping Center constitute the Debtor's only retail location and the entire platform for its business operations. Without the Lease, the Debtor has no business to reorganize and no means to generate the revenue necessary to fund any plan of reorganization or pay any creditors.

**(b)  Rejection Would Be Catastrophically Harmful to the Estate.** Rejection of the Lease would result in immediate cessation of the Debtor's business, elimination of all going-concern value, and conversion of the case to Chapter 7 liquidation—with meaningfully less value available to creditors than a successful reorganization. Rejection is not a viable alternative.

**(c)  The Remaining Lease Term Has Substantial Value.** The Lease has over twelve months remaining at rates that, absent the current arrearage, are commercially reasonable for the Morgantown, West Virginia market. The remaining lease term represents a critical business resource. The Debtor's investment in the Premises, including leasehold improvements, inventory, and customer relationships, is directly tied to this location.

**(d)  Assumption Is Essential to Subchapter V Reorganization.** The Debtor's Subchapter V plan will be built around continued business operations at the Premises. A reorganization

that preserves the business as a going concern will maximize value for all creditors, including not only WHLR but also the many trade creditors, suppliers, and financing parties listed in the Debtor's creditor matrix. Assumption of the Lease is the predicate to any viable plan.

**(e)   WHLR's Interests Are Protected.** Assumption, with cure of the $113,463.92 arrearage through the plan, will put WHLR in a better position than rejection, which would result in WHLR becoming an unsecured creditor for rejection damages. WHLR's ongoing rent stream—through May 2027—is far more valuable than a general unsecured claim in a liquidating estate. Upon entry of a court order the Debtor proposes to cure the arrearages starting in July 2026, or as such other time as the Court directs, such that the entire arrearage is cured on or before the date that the lease for the Premises terminates pursuant to its express terms in May 2027.

**WHEREFORE,** the Debtor requests entry of a Court order that:

1.  Finds and declars that the Lease is an unexpired lease of nonresidential real property that was not terminated under applicable nonbankruptcy law prior to the Debtor's bankruptcy filing;

2.  Authorizes the Debtor to assume the Lease pursuant to 11 U.S.C. § 365(a) and (b);

3.  Establishes the cure amount as $113,463.92 (subject to the Debtor's right to contest any additional amounts claimed by WHLR) to be paid through the Debtor's Subchapter V plan of reorganization;

4.  Enforces the automatic stay under 11 U.S.C. § 362(a) to prevent WHLR from taking any action to enforce the Eviction Order, including obtaining or executing any writ of possession, pending further order of this Court; and

5.  Grants such other and further relief as this Court deems just and proper.

Respectfully submitted,

　　　　DAVIS KITCHEN & TILE LLC

By:


By: /s/ Ryan W. Johnson

Ryan W. Johnson (WVSB #14178)
1049 Market Street
Wheeling, WV 26003
Telephone: (304) 212-4950
ryanjohnson@johnsonlegalservicespllc.com

*Counsel for Debtor and Debtor-in-Possession*
*Davis Kitchen & Tile, LLC*


## CERTIFICATE OF SERVICE

I certify that a copy of the above Motion was served by electronic means on those parties receiving electronic notification from the Court from the Clerk's CM/ECF system and was served by U.S. Mail, postage prepaid on June 8, 2026 on:

ATTN: Office or Director
WHLR–PIERPONT CENTER, LLC
c/o Wheeler Real Estate Company
2529 Virginia Beach Boulevard
Virginia Beach, VA 23452

WHLR–PIERPONT CENTER, LLC
c/o COGENCY GLOBAL INC., Agent
128 CAPITOL STREET
CHARLESTON, WV, 25301

via email: sfleischer@barclaydamon.com, Attorney for WHLR–PIERPONT CENTER, LLC


By: /s/ Ryan W. Johnson
Ryan W. Johnson (WVSB #14178)
1049 Market Street
Wheeling, WV 26003
Telephone: (304) 212-4950