**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

In re:

DAVIS KITCHEN & TILE, LLC,

     Debtor.

Case No. 1:26-bk-00343

Chapter 11, Subchapter V

## DECLARATION OF CHRISTOPHER COLLINS IN SUPPORT OF DEBTOR'S MOTION TO ASSUME COMMERCIAL LEASE PURSUANT TO 11 U.S.C. § 365

I, Christopher Collins, being duly sworn, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my personal knowledge, information, and belief:

## I. BACKGROUND AND QUALIFICATIONS

1. I am the Chief Executive Officer and 85% owner of Davis Kitchen & Tile, LLC (the "Debtor"), the debtor and debtor-in-possession in the above-captioned Chapter 11 Subchapter V bankruptcy case. I have served as the Debtor's principal since acquiring the business and have personal knowledge of the Debtor's business operations, financial condition, lease obligations, and the circumstances giving rise to the Chapter 11 filing.

2. I submit this Declaration in support of the Debtor's Motion to Assume Commercial Lease Pursuant to 11 U.S.C. § 365 (the "Motion"). Unless otherwise stated, all facts set forth herein are based on my personal knowledge or on business records of the Debtor that I have reviewed in the ordinary course of my responsibilities as CEO. I am authorized to make this Declaration on behalf of the Debtor.

## II. THE DEBTOR'S BUSINESS OPERATIONS

3. Davis Kitchen & Tile, LLC is a West Virginia limited liability company that has been in operation since 1910 and was reorganized in its current form in 2002. The Debtor is engaged in the retail sale of kitchen cabinets, floor coverings, tile, related fixtures and accessories, and residential design and installation services, operating under the trade name "Davis Kitchen & Tile" (also "DKT Retail").

4. The Debtor's sole retail and operational location is Store Number 3 at Pierpont Centre Shopping Center, 831 Venture Drive, Morgantown, West Virginia 26508 (the "Premises"). The Premises serve as the Debtor's showroom, warehouse, design studio, and principal place of business. The Debtor has operated continuously at the Premises since June 2022.

5. The Debtor employs a team of installation crews, design staff, and administrative personnel who serve residential customers in the Morgantown, West Virginia area and surrounding communities. The Debtor has an established customer base and generates revenue from showroom sales, contractor and installation work, and design and measurement services.

6. In my judgment, the Premises at Pierpont Centre Shopping Center are essential and irreplaceable to the Debtor's continued operations. The shopping center location provides the customer visibility, foot traffic, and accessibility that our retail showroom business requires. I am not aware of any alternative commercial location in the Morgantown market that could replicate these operational advantages or preserve our existing customer relationships on comparable terms.

7. The Debtor underwent a period of internal restructuring following a change in ownership, during which the prior owner—who had contracted to remain in place as a transition resource—passed away unexpectedly. This operational disruption, combined with the financial burdens it imposed, contributed directly to the Debtor's accumulation of rent arrearages under the Lease. That internal restructuring has since been completed, and the Debtor's business operations are now stabilized.

## III. THE COMMERCIAL LEASE

8. On or about May 5–6, 2022, the Debtor executed a Shopping Center Lease (the "Lease") with WHLR-Pierpont Center, LLC ("WHLR" or "Landlord"), a Delaware limited liability

company managed by Wheeler Real Estate Company, Virginia Beach, Virginia. A true and correct copy of the Lease is attached to the Motion as Exhibit [A] and incorporated herein.

9. The Lease provides for a five-year original term commencing June 1, 2022 and expiring May 31, 2027. The Premises consist of approximately 2,646 square feet of leasable retail area designated as Store Number 3 in the Pierpont Centre Shopping Center complex. The Permitted Use under the Lease is the sale of kitchen cabinets and related fixtures, floor coverings, and related items.

10. The Lease's rent structure is as follows: (a) Years 1–2: $3,655.89 per month minimum rent; (b) Year 3: $3,766.14 per month; (c) Year 4: $3,878.60 per month; and (d) Year 5: $3,995.46 per month. In addition to minimum rent, the Lease requires payment of Additional Rent consisting of the Debtor's proportionate share of operating costs, real estate taxes, and insurance charges, estimated at $564.48 per month.

11. I personally executed the Lease on behalf of the Debtor and separately executed the Guaranty of Lease attached as Exhibit E to the Lease, by which I personally and unconditionally guaranteed all of the Debtor's obligations under the Lease. I understand and acknowledge my personal guaranty obligations and remain committed to honoring them.

12. The Lease was and remains critical to the Debtor's business model. The Debtor has invested substantially in leasehold improvements, inventory, displays, and equipment at the Premises. These investments have no practical value outside of the Premises and would be lost entirely if the Lease were rejected and the Debtor were required to vacate.

## IV. THE STATE COURT PROCEEDINGS AND EVICTION ORDER

13. Due to the financial difficulties described above, the Debtor fell behind on its rent obligations to WHLR. In 2025, WHLR filed a civil action against the Debtor and me personally in the Circuit Court of Monongalia County, West Virginia, styled *WHLR-Pierpont Center LLC v. Davis Kitchen & Tile, LLC, Christopher Collins*, Case No. CC-31-2025-C-274, before the Honorable Michael D. Simms, seeking eviction and damages.

14. On May 4, 2026, the state court held a hearing on WHLR's motion for judgment on the pleadings as to eviction. The court determined that the Debtor had defaulted on its payment obligations and directed the parties to confer in good faith to reach a resolution.

15. Following negotiations with WHLR's counsel, on May 14, 2026, the state court entered an Agreed Order Regarding Eviction and Damages (the "Eviction Order") in the civil action. As I understand the Eviction Order, it: (a) awarded WHLR judgment for possession of the Premises; (b) directed the Debtor to vacate within seven (7) days; (c) authorized issuance of a writ of possession upon WHLR's future request; and (d) entered a money judgment of $113,463.92 against the Debtor and me jointly. I participated in the negotiations that resulted in the Eviction Order and consented to its entry.

16. Based on my personal observation and to my knowledge: (a) no writ of possession was requested, issued, or executed by WHLR before the Debtor filed its bankruptcy petition; (b) no written notice of termination of the Lease pursuant to Section 25(b)(iii) of the Lease—which requires not less than five days' written notice—was ever served on the Debtor; and (c) the Debtor remained in continuous occupancy of the Premises through and after the filing of the bankruptcy petition on May 14, 2026.

17. It is my understanding, based on my review of the Lease that the Eviction Order awarded WHLR a possessory remedy but did not constitute a termination of the Lease itself, which under Lease Section 25(b)(iii) requires five days' written notice that WHLR never provided.

## V. THE CHAPTER 11 FILING

18. On May 14, 2026, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, electing to proceed under Subchapter V for small business debtors, in the United States Bankruptcy Court for the Northern District of West Virginia. The filing was made to stop the eviction process, preserve the Debtor's business as a going concern, and provide an orderly framework for paying all creditors of the estate through a plan of reorganization.

19. The Debtor is operating its business as debtor-in-possession. Since the bankruptcy filing, the Debtor has continued to serve customers, generate revenue, employ workers, and manage its affairs in the ordinary course of business at the Premises.

20. I caused the Debtor to file its Subchapter V Chapter 11 Plan of Reorganization on May 31, 2026 (Doc. 53) (the "Plan"), together with accompanying financial projections (Doc. 53-1). The Plan is designed to cure the $113,463.92 arrearage owed to WHLR over the 60-month plan term, pay all other creditors in accordance with the Bankruptcy Code, and allow the Debtor to emerge as a reorganized entity. Assumption of the Lease is the cornerstone of the Plan.

## VI. ADEQUATE ASSURANCE OF FUTURE PERFORMANCE

21. I believe the Debtor can and will perform all future obligations under the Lease. My belief is based on the following:

22. Business Performance and Revenue. The Debtor currently generates operating income of approximately $137,939 per month from three primary revenue streams: showroom sales (approximately $94,750/month), contract installation income (approximately $37,659/month), and design, measurement, and service fees (approximately $5,527/month). These projections are set forth in detail in the financial projections filed as Exhibit 53-1 to the Plan.

23. Rent Budgeted as Operating Expense. The Debtor's operating budget, as reflected in Exhibit 53-1, budgets monthly rent at $5,221.08 as a fixed overhead expense. This amount is fully funded within the Debtor's projected monthly cash flow. The Debtor intends to pay all post-petition rent obligations currently as they come due.

24. Plan Payments. The Plan projects average monthly plan payments of approximately $27,380, funded by net operating income after expenses. After plan payments, the Debtor projects an average monthly surplus of approximately $8,346. This surplus provides a financial cushion to absorb ordinary business fluctuations while continuing to perform all lease obligations.

25. Cure of Arrearage. The Plan classifies the $113,463.92 arrearage owed to WHLR as a cure obligation under Plan Section 7.3.1 ("Assumption of Executory Contracts"), to be paid in full over the 60-month plan term. Commencing on the Plan's Effective Date (45 days after entry of the confirmation order), the Debtor will pay the arrearage concurrently with all other plan obligations. Upon entry of a Court order authorizing assumption, the Debtor intends to commence cure payments starting in July 2026, or as otherwise directed by the Court, on a schedule sufficient to cure the entire arrearage on or before May 2027, the lease's contractual expiration date.

26. Personal Guaranty. I remain personally liable under the Guaranty of Lease. My personal financial interest in the success of the Debtor's reorganization, together with my individual guaranty obligations, provides WHLR with an additional layer of assurance that all Lease obligations will be performed.

27. Security Deposit. A security deposit of $2,646 remains on file with WHLR. I request that WHLR confirm whether this deposit remains intact and has not been applied to outstanding obligations, and that any such application be credited against the total cure amount.

28. Permitted Use and Shopping Center Compliance. The Debtor's use of the Premises for the retail sale of kitchen cabinets, floor coverings, and related items is squarely within the Permitted Use defined in the Lease. The Debtor's operations do not violate any exclusives or restrictions applicable to Pierpont Centre Shopping Center tenants. Assumption of the Lease will not breach any lease provision applicable to other shopping center tenants.

29. In my business judgment, assumption of the Lease is essential to the Debtor's successful reorganization and represents the only path to preserving the Debtor's going-concern value. The Premises are the Debtor's only operational location, and there is no viable alternative. Rejection of the Lease may require immediate cessation of business, elimination of all employee jobs, and conversion to a Chapter 7 liquidation that would provide meaningfully less recovery to creditors—including WHLR—than a successful Subchapter V reorganization.

## VII. CONCLUSION

30. For all of the foregoing reasons, I respectfully urge this Court to grant the Debtor's Motion to Assume Commercial Lease, establish the cure amount at $113,463.92, and authorize the Debtor to cure the arrearage through the Plan of Reorganization on the schedule described herein.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of JUNE , 2026.

Christopher Collins

Chief Executive Officer and 85% Owner

*Davis Kitchen & Tile, LLC*

831 Venture Drive, Store No. 3

Morgantown, West Virginia 26508