**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| In re:<br>DAVIS KITCHEN & TILE, LLC,<br>Debtor. | Case No. 1:26-bk-00343<br>Chapter 11 |

**DEBTOR'S OMNIBUS RESPONSE AND OBJECTION TO WHLR-PIERPONT CENTER, LLC'S MOTION TO COMPEL IMMEDIATE REJECTION OF UNEXPIRED LEASE (DOC. 143) AND MOTION TO COMPEL ALLOWANCE AND IMMEDIATE PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM (DOC. 145)**

Davis Kitchen & Tile, LLC (the "Debtor"), by undersigned counsel, respectfully submits this omnibus response and objection to WHLR-Pierpont Center, LLC's Motion to Compel Immediate Rejection of Unexpired Lease Pursuant to 11 U.S.C. §§ 105(d)(2)(A) and 365(d)(4)(A) (Doc. 143) (the "Rejection Motion") and WHLR-Pierpont Center, LLC's Motion to Compel Allowance and Immediate Payment of Administrative Expense Claim Pursuant to 11 U.S.C. §§ 365(d)(3) and 503(b) and Court Order (Doc. 145) (the "Payment Motion"; together with the Rejection Motion, the "Motions"), each filed by WHLR-Pierpont Center, LLC (the "Landlord"). In support, the Debtor states as follows:

1. Both Motions rest on the factual assertion that "[a]s of the date of this Motion . . . , none of the payments required by the Order have been made by the Debtor." Rejection Motion ¶ 9; Payment Motion ¶ 9. That assertion is no longer accurate. On August 25, 2026, the Debtor wired $8,889.06 to the Landlord, satisfying in full both the June 2026 payment required by ¶ 2(c) of the Agreed Interim Order Continuing Hearing on Debtor's Motion to Assume Commercial Lease and Establishing Interim Lease Payments Pending Final Hearing (Doc. 134) (the "Interim Order") and the August 2026 payment required by ¶ 2(a). That payment represents approximately 77.8% of the $11,425.12 that had come due under the Interim Order as of the date the Motions were filed.

2. On reason for the delay was that a deposit of $35,000.00 into the Debtor's operating account was placed on a seven-day administrative hold by First United Bank & Trust, and the

funds earmarked for the Landlord were unavailable until the hold released. The Debtor escalated the matter with the bank and wired the Landlord's funds promptly upon release.

3. What the Landlord asks the Court to do in response, however, is both disproportionate and, with regard to the Rejection Motion, unavailable by the statute it cites. Section 105(d)(2)(A) does not authorize a court to order a debtor to reject a lease. By its terms it authorizes the court, at a status conference, to enter an order that "sets the date by which the trustee must assume or reject an executory contract or unexpired lease." 11 U.S.C. § 105(d)(2)(A). It fixes a deadline for the decision; it does not make the decision. The Debtor has already made that decision by filing its Motion to Assume Commercial Lease Pursuant to 11 U.S.C. § 365 (Doc. 59) on June 7, 2026, twenty-four days after the order for relief, and that motion is set for final hearing on September 23, 2026.

4. The Payment Motion asks for immediate payment of a sum the Debtor has now largely paid. In this Circuit, "the decision whether to order immediate payment of administrative expenses . . . is left to the discretion of the bankruptcy court." *In re Midway Airlines Corp.*, 406 F.3d 229, 242 (4th Cir. 2005). And in a subchapter V case, 11 U.S.C. § 1191(e) is a "Special Rule" that expressly permits administrative expense claims to be paid through the plan rather than in cash on the effective date.

5. Both Motions ask this Court to resolve, three weeks early and on the papers, the questions the parties agreed to have determined on September 23, 2026. The Interim Order, continued the assumption dispute to a final hearing, provided that all interim payments "shall be credited against any amounts determined to be due at the Final Hearing," and expressly reserved "any right, claim, or defense of the Debtor or the Landlord, all of which are expressly reserved for the Final Hearing." Interim Order ¶ 4. The Landlord is entitled to be paid. It is not entitled to have the motion tried twice.

6. The Debtor respectfully requests that the Court deny both Motions or, in the alternative, defer them for consideration at the September 23, 2026 final hearing on the Assumption Motion and confirmation of the Debtor's Amended Plan, on a full evidentiary record.

**BACKGROUND**

7. The Debtor operates a retail kitchen cabinet, tile, flooring and design business from Store No. 3, Pierpont Centre Shopping Center, 831 Venture Drive, Morgantown, West Virginia, under the Shopping Center Lease dated May 5–6, 2022 (the "Lease"). The Lease runs through May 31, 2027. The Premises is the Debtor's only retail location and the entire platform of its business.

8. The Debtor filed its voluntary petition under subchapter V of chapter 11 on May 14, 2026. On May 31, 2026, the Debtor filed its Subchapter V Chapter 11 Plan (Doc. 53), and on August 10, 2026, its Amended SBRA Plan (Doc. 139) (the "Amended Plan"). Both provide for assumption of the Lease and payment of the Landlord's cure claim in full. The Amended Plan fixes the Landlord's Class 7.3.1 cure claim at $111,626.17 and directs that Excess Cash Flow be applied to accelerate the Class 7.3 cure obligations ahead *of* any distribution to Class 7.1 general unsecured creditors. Amended Plan §§ 4.4(c), 7.3.

9. On June 7, 2026, within the period fixed by 11 U.S.C. § 365(d)(4)(A), the Debtor filed its Assumption Motion (Doc. 59). The Landlord objected (Doc. 109), and the Court heard the matter on July 21, 2026 and, at the parties' request, entered the Interim Order on July 31, 2026. The Interim Order continued the Assumption Motion and the Objection to a final hearing to be held together with confirmation on September 23, 2026 at 10:30 a.m., and established four interim payments pending that hearing. Interim Order ¶¶ 1–2.

10. The Landlord acknowledges that post-petition rent for July 2026 was paid. Rejection Motion ¶ 8; Payment Motion ¶ 8. The Motions now before the Court were filed on August 18 and August 19, 2026, respectively. On August 25, 2026, the Debtor wired the Landlord $8,889.06. The current status of the four payments required by ¶ 2 of the Interim Order is as follows:

| **Obligation under Doc. 134 ¶ 2** | **Amount** | **Due** | **Paid** | **Status** |
|---|---:|---|---|---|
| ¶ 2(a) — August 2026 rent | $4,444.53 | Aug. 1, 2026 | Aug. 25, 2026 | PAID (late) |
| ¶ 2(c) — June 2026 rent | $4,444.53 | Aug. 10, 2026 | Aug. 25, 2026 | PAID (late) |

| | | | | |
|---|---|---|---|---|
| ¶ 2(d) — May 2026 stub rent | $2,536.06 | Aug. 14, 2026 | — | To be tendered |
| ¶ 2(b) — September 2026 rent | $4,444.53 | Sept. 1, 2026 | — | Not yet due |
| **Total paid to date under the Order** | **$8,889.06** | | | |

11. The Debtor is committed to tendering the remaining $2,536.06 in May 2026 stub rent and to make the September 2026 rent payment.

## ARGUMENT

12. Each Motion asserts that "none of the payments required by the Order have been made." Rejection Motion ¶ 9; Payment Motion ¶ 9. Two of the four have now been made in full, and a third is not yet due.

### I. The Motion to Compel Rejection (No. 143)

**A. Section 105(d)(2)(A) permits the Court to fix a deadline for the assume-or-reject decision; it does not permit the Court to make that decision for the Debtor.**

13. Section 105(d)(2)(A) authorizes the court, at a status conference, to "issue an order . . . prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically, including an order that . . . sets the date by which the trustee must assume or reject an executory contract or unexpired lease." 11 U.S.C. § 105(d)(2)(A). The statutory text is a scheduling authority. The cases the Landlord cites address whether to accelerate the deadline for a decision, not whether a court may substitute its own decision for the debtor's. *See* Rejection Motion ¶ 14 ( "whether it is appropriate to accelerate the deadline regarding assumption or rejection").

14. *Collier on Bankruptcy* states that § 365(d)(2), which is the analogous provision permitting a contract counterparty to seek an earlier determination on rejection than what the Code would otherwise prescribe, as authority for the court to "order the trustee to determine within a specified period of time whether to assume or reject," and observes that even that request "is rarely granted." 3 *Collier on Bankruptcy* ¶ 365.05[2][a] (16th ed. 2026). Where such a request is

considered, "the settled rule, which was borrowed from equity receivership practice, is that the trustee or debtor in possession has a reasonable time within which to decide," and "[r]easonableness depends upon the facts and circumstances of the particular case." *Id.* Neither provision permits the court to make the assume-or-reject decision itself.

15. The relief the Rejection Motion actually requests goes beyond the Court's scheduling authority. It seeks and order that (a) "The Lease is rejected effective as of [___]," (b) that the Landlord "may re-key and otherwise secure and take full possession of the Premises," and that (c) "all property remaining at the Premises is deemed abandoned." The requested relief is fir a judgment on the merits of the Assumption Motion, plus possessory and abandonment relief, obtained without an evidentiary hearing. Section 105(d)(2)(A) does not supply that authority, and § 105(a) may not be used to grant relief the substantive provisions of the Code do not authorize.

**B. Case law under § 365(d)(2) does not apply to leases of nonresidential real property.**

16. Under § 365(d)(2), Congress created a remedy for a landlord of residential real property to accelerate the assume-or-reject decision. But § 365(d)(2) applies to residential leases and not to non-residential leases as is applicable in this case. As *Collier on Bankruptcy* explains, leases of nonresidential real property under which the debtor is the lessee "are not included in the provisions of section 365(d)(1) and (2). Rather, section 365(d)(4) provides the exclusive time limitations for these leases." *Id.* ¶ 365.05[3].

17. Section 365(d)(4), applicable here, contains no such statutory authorization. It fixes a deadline, prescribes the consequence of inaction, and provides for extension on motion of the trustee or the lessor. Its plain language, when contrasted to § 365(d)(2), creates no motion practice by which a landlord may obtain an order of rejection.

**C. Section 365(d)(4)(A) is a deadline provision; it is not an affirmative remedy**

18. Section 365(d)(4)(A) provides that a nonresidential real property lease is deemed rejected if the trustee "does not assume or reject" it by the earlier of 120 days after the order for relief or the entry of an order confirming a plan. It creates a deadline that operates by force of law; it does not create a cause of action by which a landlord may obtain an order of rejection. Here, the Debtor filed its Assumption Motion on June 7, 2026, twenty-four days into the case.

19. As Collier reports, "[a] review of both pre- and post-BAPCPA cases shows that an overwhelming majority of courts hold that a trustee need only file a motion to assume before the deadline," and court approval of that motion "could be granted after the expiration of the period." 3 *Collier on Bankruptcy* ¶ 365.05[3][d] & nn.46e, 46i (16th ed. 2026) (quoting *In re Simbaki, Ltd.*, 520 B.R. 241, 245 (Bankr. S.D. Tex. 2014)); *accord In re Filene's Basement, L.L.C.*, 2014 Bankr. LEXIS 2000, at *28 (Bankr. D. Del. Apr. 29, 2014) ("the act of filing a motion to assume a lease within the relevant statutory period is sufficient to prevent deemed rejection of a lease"); *Cousins Props., Inc. v. Treasure Isles HC, Inc. (In re Treasure Isles HC, Inc.)*, 462 B.R. 645 (B.A.P. 6th Cir. 2011); *City of Akron v. Akron Thermal, L.P. (In re Akron Thermal, L.P.)*, 414 B.R. 193, 206 (N.D. Ohio 2009) (the "deadline in section 365(d)(4)(A) is not a deadline for the court's determination of the issue").

20. Separately, and out of an abundance of caution, the Debtor has filed contemporaneously herewith a motion under 11 U.S.C. § 365(d)(4)(B)(i) to extend the 120-day period, together with a motion to shorten the notice and objection period applicable to it. That motion is protective and is filed without waiver of the position stated in the preceding paragraph. Cause for the extension plainly exists: the Court set the final hearing for September 23, 2026; the Landlord agreed to that date; the Debtor is paying and curing on its post-petition obligations; and the extension would preserve rather than prejudice the Landlord's rights.

**D. The factors the Landlord invokes weigh against compelling rejection.**

21. The Landlord recites the familiar multi-factor test. Rejection Motion ¶ 14. Applied to this record, the factors favor the Debtor.

i. **Importance of the contract to the Debtor's business.** This factor is dispositive. The Landlord states that the Debtor's plan "is entirely reliant on assumption of the Lease for its feasibility." Rejection Motion ¶ 5. The Premises is the Debtor's only retail location. Rejection does not just diminish the estate; it may effectively end it.

ii. **Whether the Debtor has had time to appraise its situation.** The Debtor appraised its situation and decided within twenty-four days of the petition to assume the lease. The Lease is assumed in the Assumption Motion, in the original Plan, and in the Amended Plan.

iii. **Whether the Landlord continues to receive payment.** It does. July 2026 rent was paid, and June and August 2026 rent were paid on August 25, 2026. The remaining stub-rent payment will be tendered and the Debtor is committed to pay the September rent.

iv. **Whether the Landlord will be damaged beyond the compensation available under the Code.** The Landlord's post-petition claim is an administrative expense under § 365(d)(3) and interim payments are credited against amounts determined due at the final hearing (Interim Order ¶ 4); the Lease security deposit of $2,646.00 remains on deposit; the personal guaranty of Christopher Collins (Lease Ex. E) is unaffected by this case. The Amended Plan pays the Landlord's cure claim in full and accelerates it ahead of general unsecured creditors. The Landlord's exposure over the next three weeks is minimal.

v. **Balance of harm.** Denying the Rejection Motion costs the Landlord a three-week wait for a hearing. Granting it terminates a going concern, eliminates the jobs it supports, extinguishes the customer deposits and work-in-progress the Amended Plan protects, and converts the Landlord from a creditor being paid in full into the holder of a rejection-damages claim in a liquidating estate.

vi. **Safeguards afforded the parties.** The Interim Order already provides for a payment schedule, a credit mechanism, a full reservation of rights, and this Court's retained jurisdiction to "interpret and enforce" the Order.

vi. **Whether the Debtor has failed or is unable to formulate a plan.** The Debtor has filed a plan (Doc. 53) and an amended plan (Doc. 139), and confirmation is set for September 23, 2026.

**E. The Landlord's authorities describe a different type of debtor.**

22. The case of *In re Perfectlite Co.*, 116 B.R. 84 (Bankr. N.D. Ohio 1990), involved a debtor "intent only on occupying the leased premises as long as possible without paying rent." *Id.* the court in the case of *Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 105 (2d Cir. 1982), condemned a debtor seeking to "have its cake and eat it too." *Id.* This Debtor has paid July, June and August post-petition rent, has committed the balance to a date certain, and has been in Court

on assumption since June 7. Late payment under an agreed order is a materially different case from no payment at all.

23. Collier's own description of the Landlord's lead case makes the distinction plain. *Theatre Holding* is summarized as holding that "when debtor failed to formulate plan a year after commencement of case and lessor was unlikely to obtain compensation for losses suffered, court could shorten time to assume or reject." 3 *Collier on Bankruptcy* ¶ 365.05[2][a] n.15 (16th ed. 2026). This Debtor filed a plan seventeen days after the Petition Date and an amended plan on August 10, 2026, and this Landlord holds an administrative-priority claim under § 365(d)(3), a cure claim paid in full under the Amended Plan, a security deposit, and an unaffected personal guaranty.

**F. The Code expressly contemplates that a lease will be assumed through a plan, and Collier advises that the decision ordinarily should be deferred to confirmation.**

24. The Rejection Motion's implicit premise is that the Debtor must resolve the fate of the Lease now, outside a plan. However, § 1123(b)(2) of the Bankruptcy Code provides that a plan "may provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected." *Collier on Bankruptcy* explains that assumption in a plan "is often a useful means to avoid binding the estate to contracts or leases before formulation of a feasible business plan under which the plan proponent knows whether it will want the benefits and burdens of each agreement," and concludes that "the decision to assume a long-term contract usually should be delayed until confirmation." 3 *Collier on Bankruptcy* ¶ 365.05[5] (16th ed. 2026) (emphasis added).

**G. Rejection would reduce the Landlord's recovery, not protect it.**

25. Under the Amended Plan the Landlord is treated as a Class 7.3.1 cure claimant in the amount of $111,626.17, paid in full, with Excess Cash Flow applied to accelerate that cure ahead of Class 7.1 general unsecured creditors, and with go-forward rent carried as an ordinary operating expense of the reorganized business. Amended Plan §§ 4.4(c), 7.3. If the Lease is rejected, the Debtor loses its only location, the business stops, and the Landlord's claim becomes a general unsecured rejection-damages claim in an estate whose estimated distribution to Class 7.1

on the Minimum Plan Base is 0.59%. *See* Amended Plan § 4.3. Rejection would take a creditor who is being paid in full and leave it sharing *pro rata* in pennies.

**II. The Payment Motion should be denied or deferred to the final hearing (Doc. 145).**

26. The Payment Motion seeks an order compelling payment of $11,502.28. Of the amounts actually due under the Interim Order when the Motion was filed, $8,889.06 has been paid. No order is needed to compel payment of a sum already paid, and the Debtor has committed to the remaining $2,536.06. The Debtor does not dispute that its post-petition obligations under the Lease must be timely performed under 11 U.S.C. § 365(d)(3) and that such obligations are entitled to administrative treatment under § 503(b)

27. The Fourth Circuit has held that "the decision whether to order immediate payment of administrative expenses allowed pursuant to § 365(d)(10) and § 503(b) is left to the discretion of the bankruptcy court." *In re Midway Airlines Corp.*, 406 F.3d 229, 242 (4th Cir. 2005) (quoted at Payment Motion ¶ 17). The Landlord's principal recent authority, *In re Steepologie, LLC*, 673 B.R. 630 (Bankr. W.D. Tex. 2024), holds that § 365(d)(3) does not mandate immediate payment, that a failure to pay under § 365(d)(3) "leads to an administrative claim under § 503(b), not a free-floating, superpriority claim under § 365(d)(3) itself," and that bankruptcy courts "generally have significant discretion in ordering the payment of administrative claims." *Id.* at 639–40. The *Steepologie* court declined to compel immediate payment absent "hallmarks of gamesmanship or abuse" and absent evidence of administrative insolvency. Neither is present here: the Debtor has paid, is paying, and has filed monthly operating reports throughout the case (Docs. 39, 77, 129, 147).

28. The subchapter V context reinforces that administrative claims may be paid over time. Section 1191(e) provides that "[n]otwithstanding section 1129(a)(9)(A) . . . , a plan that provides for the payment through the plan of a claim of a kind specified in paragraph (2) or (3) of section 507(a) . . . may be confirmed under subsection (b)." 11 U.S.C. § 1191(e). Congress thus made clear that in a subchapter V case administrative expense claims may be paid over time through the plan. An order compelling immediate cash payment on the eve of confirmation would preempt the payment mechanism provided by Congress for subchapter V cases.

29. The Payment Motion asserts a "significant risk of administrative insolvency" but offers no evidence of the estate's administrative liabilities, its cash position, or its projected receipts. All those documents are in the record in the Debtor's operating reports.

## RESERVATION OF RIGHTS

30. The Debtor reserves all rights to supplement or amend this response, to present evidence and argument at the September 23, 2026 final hearing, to object to the amount and allowance of any claim asserted by the Landlord, and to assert any right, claim, or defense reserved to it under ¶ 4 of the Interim Order. Nothing herein constitutes an admission of the amount of any cure or administrative claim or a waiver of any right, claim, or defense.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court (i) DENY the Rejection Motion (Doc. 143); (ii) DENY the Payment Motion (Doc. 145), and (iii) to grant such other and further relief as is just and proper.

Respectfully submitted,

DAVIS KITCHEN & TILE, LLC,

Debtor and Debtor-in-Possession,

By Counsel

/s/ Ryan W. Johnson
Ryan W. Johnson (WVSB #14178)
JOHNSON LEGAL SERVICES, PLLC
1049 Market Street
Wheeling, WV 26003
(304) 212-4950
ryanjohnson@johnsonlegalservicespllc.com
Counsel for the Debtor and Debtor-in-Possession

## CERTIFICATE OF SERVICE

I, Ryan W. Johnson, hereby certify that on August 29, 2026, I electronically filed the foregoing *Debtor's Omnibus Response and Objection to WHLR-Pierpont Center, LLC's Motion to Compel Immediate Rejection of Unexpired Lease (Doc. 143) and Motion to Compel Allowance*

*and Immediate Payment of Administrative Expense Claim (Doc. 145)* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties participating in the same, including without limitation counsel for WHLR-Pierpont Center, LLC, the Subchapter V Trustee, and the Office of the United States Trustee.

/s/ Ryan W. Johnson
Ryan W. Johnson (WVSB #14178)
JOHNSON LEGAL SERVICES, PLLC
1049 Market Street
Wheeling, WV 26003