**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| In re:<br>DAVIS KITCHEN & TILE, LLC,<br><br>Debtor. | Case No. 1:26-bk-00343<br><br>Chapter 11 |

**DEBTOR'S RESPONSE AND OBJECTION TO THE UNITED STATES TRUSTEE'S MOTION TO DISMISS OR CONVERT FOR FAILURE TO COMPLY WITH COURT'S OPERATING ORDER REQUIRING OPENING OF DEBTOR IN POSSESSION BANK ACCOUNTS**

Davis Kitchen & Tile, LLC, debtor and debtor-in-possession (the “Debtor”), by undersigned counsel, responds and objects to the United States Trustee’s Motion to Dismiss or Convert for Failure to Comply With Court’s Operating Order Requiring Opening of Debtor In Possession Bank Accounts [Doc. 159] (the “Motion”), and states as follows:

1. The Debtor does not dispute the central fact. It has continued to operate through the two deposit accounts it held at First United Bank & Trust before the Petition Date: Nos. xxxx7779 (operating) and xxxx0062 (retail), and it has not opened accounts at a depository appearing on the Region 4 Authorized Depository List.

2. The Motion describes “dereliction of duty,” “gross mismanagement,” and a debtor whose conduct calls into question “whether the Debtor ever actually intended to comply.” Motion ¶¶ 16, 20. The record does not support that description, and dismissal or conversion is not the proportionate response to a disclosed, curable, non-prejudicial compliance gap.

3. Three facts frame the issue.

- First, the depository problem has a specific cause. First United Bank & Trust is not on the Region 4 Authorized Depository List. First United is also the Debtor's principal secured lender, the holder of the liens on the Debtor's cash collateral, a party to two stipulations in this case [Docs. 63, 69], and the recipient of court-ordered monthly adequate protection payments [Doc. 94]. Undersigned counsel identified the depository problem and communicated it to the Debtor's principal on May 18, 2026.

- Second, this Court's Operating Order does not require what the Motion assumes it requires in these circumstances. Paragraph III directs the Debtor in Possession to close its existing accounts and transfer the funds to new accounts "unless such funds constitute cash collateral in which event court approval to make the transfer may be necessary," and authorizes the Debtor "to open and maintain bank accounts in compliance with the provisions of 11 U.S.C. § 345." Doc. 10 ¶ III. Every dollar in the two accounts is cash collateral, and under ¶ 3 of the Final Cash Collateral Order [Doc. 94] First United holds replacement liens expressly extending to the Debtor's "deposit accounts."

- Third, nothing has been concealed. The Debtor disclosed both accounts, by number, in its Initial Operating Report filed May 24, 2026 [Doc. 39]. It delivered to the United States Trustee a Verified List of All Depository Accounts and an executed Authorization for Release of Bank Account Information on May 26, 2026, together with statements for both accounts. It has attached to every Monthly Operating Report the bank statements and bank reconciliations for both accounts [Docs. 77, 129, 147]. The Motion's own record citations are to those filings. Motion ¶ 10.

4. The authority on which the Motion relies defines gross mismanagement as a failure that "results in a materially inaccurate financial picture or where other acts in violation of the Code are hidden." Motion ¶ 16 (quoting *In re Barnette*, 2026 Bankr. LEXIS 1708, at *11 (Bankr. D.D.C. 2026)). Here the financial picture is neither inaccurate nor hidden. The United States Trustee has had, every month since the Petition Date, the statements for the very accounts the Motion complains of.

5. The Debtor therefore respectfully requests that the Court deny the Motion and, in lieu of dismissal or conversion, enter an order under 11 U.S.C. § 345(b) authorizing the Debtor to maintain its existing First United accounts as its debtor-in-possession accounts on the conditions

set forth below or, in the alternative, fixing a short period within which the Debtor shall open accounts at an authorized depository and transfer the funds.

## RESPONSE TO SPECIFIC AVERMENTS

6. Paragraphs 1 through 8. Admitted, except that the Debtor notes balloting is complete, and that every ballot cast accepted the Amended Plan.

7. Paragraph 9. Admitted that the Court entered its Operating Order on May 14, 2026 [Doc. 10] and that the Debtor stated in its Initial Operating Report that it "is opening DIP accounts." The Debtor denies any implication that the statement was made in bad faith; it reflected the Debtor's intention at the time, and the desire to have First United Bank add its name to the list of authorized depositories. The Debtor further states that ¶ III of the Operating Order is qualified as set forth above.

8. Paragraph 10. Admitted that the accounts reported in the Monthly Operating Reports are the two pre-petition First United accounts and that the Debtor has not filed a motion to continue use of those accounts. The Debtor files such a motion contemporaneously with this Response. The Debtor denies the implication that any account or transaction has gone unreported; no other deposit account of the Debtor exists, and every statement for both accounts has been produced.

9. Paragraphs 11 through 13. The cited authorities speak for themselves. The Debtor denies that they compel the relief requested on this record.

10. Paragraphs 14 through 20. Denied as set forth in the Argument below. The Debtor specifically denies ¶ 20's assertion that there is "no reason other than the Debtor's dereliction of duty," and denies ¶ 18's assertion that no unusual circumstances exist.

## ARGUMENT

### I. The record does not establish gross mismanagement under § 1112(b)(4)(B).

11. The Motion's gross-mismanagement theory rests entirely on *In re Barnette*, No. 24-00111, 2026 Bankr. LEXIS 1708, at *11 (Bankr. D.D.C. 2026). The *Barnette* debtor used

Apple Cash which is a consumer peer-to-peer payment application that generates no bank statements, is subject to no depository agreement, and leaves no auditable record, and filed operating reports that produced "a materially inaccurate financial picture." *Barnette* failed to explain at least $15,000 in discrepancies between Apple Cash statements and operating report summaries (including $3,700 unexplained in June 2025 alone), never provided debtor-in-possession account statements from a purported Truist Bank account, and failed to disclose his non-filing spouse's payment of all living expenses and secured obligations.

12. Here, the Debtor continued its use of two long-standing commercial deposit accounts at a federally insured bank holding deposits under the FDIC limits: the same bank that holds liens on substantially all of its assets and appears in this case through counsel. It identified those accounts by number, it executed the United States Trustee's authorization for release of bank account information, it has filed monthly operating reports with bank statements, bank reconciliations, income statements, balance sheets, statements of cash flow, work-in-progress reports and forward projections. *See* Docs. 39, 77, 129, 147.

13. Gross mismanagement under § 1112(b)(4)(B) describes a failure of stewardship, not a failure to use a particular bank. The funds have been accounted for, the secured creditor's collateral has been protected by replacement liens and monthly adequate protection payments, and no party has identified a single dollar that is unexplained.

14. Paragraph III of the Operating Order contains two provisions the Motion does not address. It directs transfer of funds to new debtor-in-possession accounts "unless such funds constitute cash collateral in which event court approval to make the transfer may be necessary," and it authorizes the Debtor "to open and maintain bank accounts in compliance with the provisions of 11 U.S.C. § 345." Doc. 10 ¶ III. The funds in both accounts are First United's cash collateral; that has been the subject of contested litigation in this case resulting in an interim order [Doc. 34], a stipulation [Doc. 69] and a Final Order [Doc. 94] granting First United replacement liens in the Debtor's "deposit accounts." Doc. 94 ¶ 3.

15. The Debtor contends any violation is a procedural one and not the indifference to the Code that the Motion describes.

## II. Even if cause exists, § 1112(b)(2) bars dismissal or conversion

16. Section 1112(b)(2) provides that the Court may not convert or dismiss if it finds unusual circumstances establishing that relief is not in the best interest of creditors and the estate, the movant has not established a ground of the kind specified in § 1112(b)(4)(A), there is a reasonable likelihood that a plan will be confirmed within a reasonable time, and there is reasonable justification for the act or omission and it will be cured within a reasonable period fixed by the Court. Each condition is satisfied.

17. This case is close to a consensual confirmation hearing. Balloting is complete and *every* ballot cast accepted the Amended Plan. The Amended Plan pays the § 507(a)(7) consumer deposit claims of ten households in full; provides for the completion of twenty-two residential kitchen, tile and flooring projects that are in progress or contracted; cures the Debtor's commercial lease; and pays priority tax claims of the Internal Revenue Service and the West Virginia State Tax Department in full. Dismissal would return the Debtor to a state-court eviction proceeding in which the landlord holds an unexecuted writ of possession and a $113,463.92 judgment, and would leave the consumer claimants with no forum. Conversion would likely end the business, leave twenty-two households with unfinished homes and unsecured claims, and reduce the landlord from a creditor paid in full to the holder of a rejection claim sharing in no distribution. Neither outcome serves "the best interest of creditors and the estate." 11 U.S.C. § 1112(b)(1).

18. The Motion does not assert a substantial or continuing loss to or diminution of the estate coupled with the absence of a reasonable likelihood of rehabilitation. The Debtor is operating, paying post-petition rent and adequate protection, and reporting monthly.

19. The confirmation hearing is currently set for September 23, 2026. Two objections to the Amended Plan are pending [Docs. 155, 157], both of which the Debtor is addressing. A plan that has been accepted by every voting creditor is not a speculative plan.

20. The justification is set out above: the Debtor's bank is not an authorized depository, the funds are that bank's cash collateral, and the Operating Order conditions the transfer of cash collateral on court approval. The Debtor will comply with whatever the Court orders within fourteen (14) days of entry, and has filed the contemporaneous motion to continue the use of its pre-petition bank accounts.

**III. The relief the Debtor requests.**

21. Contemporaneously with this Response, the Debtor has filed its Motion for Authority to Maintain Existing Depository Accounts Pursuant to 11 U.S.C. §§ 345(b) and 363(c)(1) or, in the Alternative, for a Fixed Period Within Which to Open Debtor-in-Possession Accounts (the "Depository Motion"). Section 345(b) requires a bond or the deposit of securities for estate funds held outside federally insured or guaranteed deposits "unless the court for cause orders otherwise." 11 U.S.C. § 345(b). Cause exists here, and the Debtor proposes to accept conditions that give the United States Trustee more protection than a transfer would:

- First United is an FDIC insured institution and both accounts are therefore fully insured;
- The Petition Date was May 14, 2026. Four months later, the US Trustee filed its Motion. Check or items drawn before the Petition Date are not in danger of being honored.
- The Debtor continues to furnish monthly statements and reconciliations for both accounts with each Monthly Operating Report; and
- First United's replacement liens under ¶ 3 of the Final Cash Collateral Order [Doc. 94] remain unaffected.

22. If the Court prefers that the Debtor open accounts at an authorized depository, the Debtor asks only that the Court fix a period of fourteen (14) days to do so and provide that First United's replacement liens attach to the new accounts with the same validity, priority and extent. The Debtor will comply.

## RESERVATION OF RIGHTS

23. The Debtor reserves all rights to supplement this Response, to present evidence and argument at any hearing on the Motion, and to be heard on the form of any order. The Debtor is prepared to support the factual assertions in this Response by the declaration of Christopher Collins, its Chief Executive Officer, and to produce any documents the Court or the United States Trustee requests.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that the Court (i) DENY the United States Trustee's Motion to Dismiss or Convert [Doc. 159]; (ii) GRANT the contemporaneously filed Depository Motion and authorize the Debtor to maintain its existing accounts at First United Bank & Trust as debtor-in-possession accounts on the conditions set forth above; (iii) in the alternative, fix a period of fourteen (14) days within which the Debtor shall open accounts at an authorized depository and transfer the funds, with First United's replacement liens attaching to the new accounts with the same validity, priority and extent; and (iv) grant such other and further relief as is just and proper.

Respectfully submitted,

DAVIS KITCHEN & TILE, LLC,
Debtor and Debtor-in-Possession,
By Counsel

/s/ Ryan W. Johnson
Ryan W. Johnson (WVSB #14178)
JOHNSON LEGAL SERVICES, PLLC
1049 Market Street
Wheeling, WV 26003
(304) 212-4950
ryanjohnson@johnsonlegalservicespllc.com
Counsel for the Debtor and Debtor-in-Possession

**CERTIFICATE OF SERVICE**

I, Ryan W. Johnson, hereby certify that on September 13, 2026, I electronically filed the foregoing *Debtor's Response and Objection to the United States Trustee's Motion to Dismiss or Convert for Failure to Comply With Court's Operating Order Requiring Opening of Debtor in Possession Bank Accounts* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties participating in the same, including without limitation counsel for WHLR-Pierpont Center, LLC, the Subchapter V Trustee, and the Office of the United States Trustee.

/s/ Ryan W. Johnson

Ryan W. Johnson (WVSB #14178)
JOHNSON LEGAL SERVICES, PLLC
1049 Market Street
Wheeling, WV 26003
(304) 212-4950
ryanjohnson@johnsonlegalservicespllc.com
Counsel for the Debtor and Debtor-in-Possession