**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| In re:<br>DAVIS KITCHEN & TILE, LLC,<br>Debtor. | Case No. 1:26-bk-00343<br>Chapter 11 |

**DEBTOR'S OMNIBUS RESPONSE TO THE UNITED STATES TRUSTEE'S RENEWED AND AMENDED OBJECTION (DOC. 193) AND THE SUPPLEMENTAL OBJECTION OF THE STATE OF WEST VIRGINIA (DOC. 194) AND THE WHLR-PIERPONT CENTER, LLC'S SUPPLEMENTAL OBJECTION (DOC 190) TO CONFIRMATION OF THE AMENDED SBRA PLAN**

Davis Kitchen & Tile, LLC, debtor and debtor-in-possession (the "Debtor"), by undersigned counsel, submits this omnibus response to the *United States Trustee's Renewed and Amended Objection to the Debtor's Amended Subchapter V Chapter 11 Plan* (Doc. 193) (the "UST Objection") and the *Supplemental Objection by the State of West Virginia, Office of the Attorney General, Consumer Protection and Antitrust Division, to Confirmation of the Debtor's Amended Plan* (Doc. 194) (the "State Objection"; together, the "Objections"), including the grounds they incorporate from the State's *Limited Objection* (Doc. 155) (the "State Limited Objection," cited as "State Ltd. Obj."), the United States Trustee's original objection (Doc. 157), and WHLR-Pierpont Center, LLC's *Supplemental Objection to Confirmation* (Doc. 190) (the "WHLR Objection"). In support, the Debtor states as follows:

## I. NOTICE TO CONSUMER CONTRACT COUNTERPARTIES AND THE MAILING MATRIX

1. The original objections by the State and Unites States Trustee were directed principally at the Debtor's failure to serve the Amended Plan on nineteen consumers listed on Amended Schedule G (Doc. 113). State Ltd. Obj. (Doc. 155) at 1–4, ¶¶ 1–13 & Prayer ¶¶ 1–2, 4; UST Obj. (Doc. 157) ¶¶ 5–7 & Relief Requested ¶¶ 1–3. That defect has been cured. By Order entered September 14, 2026 (Doc. 165), the Court approved a plain-language supplemental notice,

established October 15, 2026 as the deadline for those counterparties to object and to vote, and continued the confirmation hearing to October 28, 2026. On September 15, 2026 the Debtor served each of the counterparties with the supplemental notice, the Amended Plan, the Court's scheduling orders, and a ballot, and filed its certificate of service and a supplemental address matrix adding the Schedule G counterparties to the creditor matrix (Doc. 168). On September 18, 2026 the Debtor served the same documents and Official Form 309F2 on Diane Marcotte Corwin and Donald E. Corwin, Jr. (Doc. 174), and the Debtor has served the Notice of Chapter 11 Bankruptcy Case on newly added creditors in compliance with the Court's Order of September 17, 2026 (Docs. 171, 172, 175).

2. Six ballots were returned by or on behalf of Schedule G counterparties, Barbara and Allen Rowan filed an objection to confirmation (Doc. 187), and Rebecca F. Dittenhafer and the Rowans filed proofs of claim (Claim Nos. 31 and 32). Each of the consumer counterparties on Amended Schedule G has now received actual notice of the case, the Amended Plan, the treatment of its contract, and the deadlines to object and vote.

3. The State Objection identifies four names on the Debtor's Work-in-Progress Report that do not appear on the Debtor's schedules: Robinson, Delardas, Del Greco and Maier. State Obj. at 2. The Robinson, Delardas and Del Greco projects first appear on the Debtor's Work-in-Progress Reports after the petition date (Docs. 147, 176) and do not appear on any of the Debtor's schedules or pre-petition customer lists; contracts entered into after the petition date in the ordinary course of its business are not listed in the Debtor's schedules. The Maier project is described in the Debtor's motion of May 29, 2026, as being at the contract stage (Doc. 47 ¶ 8). Ordinary course contracts are not pre-petition executory contracts that the Plan assumes or claims that the Plan treats.

4. The State asks that confirmation not be considered as to any consumer who has not received notice. State Obj. at 3. The Debtor proposes that the confirmation order provide that (a) nothing in the Plan or the confirmation order discharges, releases, enjoins or otherwise affects any obligation of the Debtor under a customer contract entered into after the petition date, each of which the Debtor intends to perform in the ordinary course, notwithstanding the release and injunction provisions in Part 3 of the Amended Plan; and (b) nothing in the Plan or the confirmation

order binds any pre-petition customer of the Debtor who did not receive notice of the Amended Plan, whose rights are reserved.

## II. ADEQUATE INFORMATION AND THE TREATMENT OF CONSUMER CONTRACTS AND CLAIMS

4. The United States Trustee contended that, without notice, the Schedule G consumers could not make the elections on which the Debtor's income depends, so that the Amended Plan lacked adequate information. UST Obj. (Doc. 157) ¶ 8. In a Subchapter V case, 11 U.S.C. § 1125 does not apply unless the Court for cause orders otherwise, 11 U.S.C. § 1181(b), and the Court has not done so. However, the counterparties have now received notice and ballots, six have voted, one has objected, and two have filed claims.

5. The State contends that the Amended Plan assumes consumer contracts without stating a cure amount or providing adequate assurance of future performance, as 11 U.S.C. § 365(b)(1) requires, and that disputes about performance or pre-petition termination may exist. State Ltd. Obj. ¶¶ 7–12. The State and the United States Trustee also ask that the Debtor clarify its treatment of all consumer claims and executory contracts. State Ltd. Obj., Prayer ¶ 3; UST Obj. (Doc. 157), Relief Requested ¶ 4.

6. These are purchase-and-install contracts: the customer pays a deposit and progress draws, and the Debtor supplies the materials and installs them. As long as a contract hasn't been terminated and nothing is owed back to the customer under its terms, the Debtor's default is a failure to perform on time, and the cure is completing the work. A deposit that exceeds the work done so far isn't a monetary default. It's the advance payment the contract calls for, and the Debtor earns it by doing the work. There's nothing to cure. Section 365(b)(1) applies only "if there has been a default."

7. *Keough, Battin and Warren.* The State notes that these three consumers appear both in Class 5.3 and on Amended Schedule G, and contends that the Amended Plan does not define what it means for them to "elect to proceed." State Ltd. Obj. ¶ 10. The Amended Plan addresses this concern: a party with a pending project "need not undertake any affirmative step to preserve the obligations of payment and performance." Amended Plan, Part 2. A consumer who

takes no action therefore proceeds with its contract, and, under the footnotes to §§ 5.3 and 7.1, receives performance rather than payment on its claim. Each of these three projects is on the Debtor's current production schedule (Doc. 189). Because each of these consumers has filed a proof of claim seeking the return of its deposit (Claim Nos. 21, 25 and 27), the Debtor will object to their proof of claim if the parties continue with their contracts such that the consumers do not both receive performance and cash.

8. The State notes that some Schedule G counterparties may hold priority deposit claims. State Ltd. Obj. ¶ 5. Any counterparty whose contract is rejected may file a proof of claim within thirty days after the rejection. Two counterparties, Rebecca F. Dittenhafer (Claim No. 31, $23,594.22) and Barbara and Allen Rowan (Claim No. 32), have already filed claims seeking the return of their deposits. The Debtor has proposed to the Rowans a stipulation resolving their objection (Doc. 187), under which they will receive the same treatment as the Class 5.3 claimants. The Debtor will treat the Dittenhafer claim under the same election. Debtor's counsel has also been contacted by Michael and Tiffany Schwalm legal counsel who has requested similar treatment.

## III. CUSTOMER DEPOSITS AND COMMUNICATION WITH CUSTOMERS

9. The United States Trustee asks what the Debtor has done with deposits for work that has not been performed, noting that at least two counterparties have contacted that office. UST Obj. ¶¶ 7, 12. The State reports that it has received complaints from six consumers describing deposits taken for projects not completed or not begun. State Ltd. Obj. at 1–2, ¶ 9.

10. Before and after the petition date, customer deposits were deposited into the Debtor's operating account and used for the Debtor's operating expenses, including materials and labor on other customers' projects. The consequence is shown on the Debtor's Work-in-Progress Report: for each job, it states the contract balance remaining to be collected and the cost of the materials needed to complete the job. Across the twenty-nine jobs on the report, the remaining balances of $433,746 exceed the materials required of $278,507. See Exhibit A, Schedule 2. Four lines on the report, including the Warren, Schifano and Kessler jobs, show materials costs exceeding the remaining balance.

11. The State notes that start dates for several projects, including the Dittenhafer and Schwalm projects, have been deferred repeatedly without explanation. State Obj. at 1–2. Following the petition date the Debtor's principal cabinetry supplier terminated its account, and the Debtor was required to renegotiate terms with its cabinetry manufacturers before any of them would accept orders. The Debtor has since renegotiated terms with two of its cabinetry manufacturers, US Cabinet Depot and Showplace, and has added a local custom cabinetry maker, and is ordering and receiving materials from each. Current lead times are four to six weeks, and the Debtor's start dates are set by those lead times.

## IV. FEASIBILITY

12. Section 1129(a)(11) requires a finding that confirmation "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor . . . unless such liquidation or reorganization is proposed in the plan." Its purpose is to prevent confirmation of "visionary schemes" that promise creditors more than the debtor can attain. *Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985).

13. When a Subchapter V plan is confirmed under § 1191(b), a plan is fair and equitable if, among other things, "(A) the debtor will be able to make all payments under the plan; or (B)(i) there is a reasonable likelihood that the debtor will be able to make all payments under the plan; and (ii) the plan provides appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event that the payments are not made." 11 U.S.C. § 1191(c)(3). Creditors are further protected by by the deferral of the discharge until plan payments are completed, § 1192, and by post-confirmation modification, § 1193(c).

14. The State cites *In re Trevarrow Lanes, Inc.*, 183 B.R. 475, 482 (Bankr. E.D. Mich. 1995), for the principle that projections must rest on "concrete evidence of financial progress" and may not be "speculative, conjectural, or unrealistic." State Obj. at 3. The Debtor's response is based on the Debtor's reported results and documented backlog, summarized in Exhibit A, rather than on the projections attached to the Amended Plan.

15. The Debtor's results for the four full post-petition months reported to date, as stated in its monthly operating reports are as follows:

| | Jun-26 | Jul-26 | Aug-26 | Sep-26 | Total |
|---|---|---|---|---|---|
| Revenue (income statement) | $27,797 | $64,412 | $58,207 | $24,802 | $175,217 |
| Direct expense | (17,016) | (27,196) | (29,384) | (32,756) | (106,352) |
| Gross profit (as reported) | $10,781 | $37,216 | $28,823 | ($7,954) | $68,865 |
| Gross margin | 38.8% | 57.8% | 49.5% | (32.1%) | 39.3% |
| Indirect expense, incl. rent (as reported) | (30,476) | (32,684) | (26,285) | (19,399) | (108,844) |
| Net income (loss) (as reported) | ($19,695) | $4,532 | $2,538 | ($27,353) | ($39,979) |

The Debtor's results for the four full post-petition months reported to date are (Docs. 129, 147, 176, 189).

16. The United States Trustee states that the Debtor's income has fallen short of its projections without an explanation of how the shortfall will be made up. UST Obj. ¶¶ 13–15; UST Obj. (Doc. 157) ¶ 9. The WHLR Objection, incorporated by the State, tabulates the variance between the Debtor's monthly cash receipts and the projection filed with its September report, and observes that the Debtor has not yet shown enough monthly net income to make a single proposed Plan payment. WHLR Obj. ¶¶ 11–14. Those statements are accurate as to the months reported to date.

17. Three things should be taken into consideration regarding the Debtor's record of performance. First, June reflects the disruption caused by the termination of the Debtor's principal cabinetry supplier on the petition date; the Court authorized payment of critical vendors by Order entered June 5, 2026 (Doc. 61). Second, July and August were profitable. Third, September's loss arose because the Debtor incurred $32,755.95 in direct costs, including $20,881.60 in subcontracted labor and $9,121.88 in materials, against $24,801.51 in revenue. Third, September's loss arose because the Debtor incurred $32,755.95 in direct costs, including $20,881.60 in subcontracted labor and $9,121.88 in materials, against $24,801.51 in revenue earned in the month.

18. The United States Trustee is also correct that the Debtor's reported income would be lower, and negative, had the Debtor made its September and October rent and adequate protection payments. UST Obj. ¶ 13.

19. The Debtor's 2025 indirect operating expenses averaged $50,210.75 per month against average monthly revenue of $64,554.08, producing a 2025 operating loss of $205,651, and

averaged $36,627.25 per month from January through April 2026, according to the Debtor's internal financial statements.[1] Since the petition date, indirect expenses including rent were $30,476.37 in June, $32,683.63 in July and $26,285.08 in August 2026 (Docs. 129, 147, 176). The September report records indirect expenses of $19,398.84, but that figure omits September rent, which was not paid. The Debtor's current projections, filed with its September report, estimate indirect expenses including rent of approximately $30,600 per month (Doc. 189), roughly 60% of the 2025 level.

20. The Debtor's Work-in-Progress Report dated October 13, 2026 (Doc. 189) lists contract balances of $433,746 still to be collected on jobs in progress or scheduled to start between October 19 and December 12, 2026, against estimated materials costs of $278,507 to complete them, leaving a margin of $155,239. See Exhibit A, Schedule 2. If those jobs are completed on that schedule, the $155,239 margin exceeds the Debtor's fixed costs of approximately $107,300 for October 2026 through January 2027 by roughly $48,000. That projection is sufficient to begin Plan payments in January 2027. The Debtor acknowledges the risk that three counterparties whose projects account for $97,676 of the backlog (Corwin, Sherfinski and Dittenhafer) voted to reject the Amended Plan and may seek to cancel.

21. The State asks why the Debtor's September report projects net income of $0.01 for October and $15,759.10 for November. State Obj. at 3–4. The projection assumed that backlog jobs scheduled to start between October 19 and November 30 would generate revenue as they started.

22. After January 2027, feasibility depends on new contract sales. The Debtor's current cost structure and a 45% gross margin, the existing Minimum Monthly Plan Payment requires monthly revenue of approximately $94,600. The Debtor's 2025 revenue averaged $64,554 per month at a 51.2% gross margin. The Debtor will present the testimony of Christopher Collins regarding its sales pipeline, marketing, and the contracts executed since the petition date.

23. The WHLR Objection asserts that the Debtor owes at least $132,017.21 in pre-petition and post-petition rent and charges, that the lease terminates in March 2027, and that the

[1] This information is based on the Debtor's income statement for the 12 months ending December 2025: Statement totals: total operating income $774,648.61; total indirect expense $602,529.29 (overhead $382,923.56 plus administrative $219,605.73); income from operations $(205,650.88); net loss $(205,772.09).

Debtor cannot cure that amount in the time remaining. WHLR Obj. ¶¶ 4, 10. The Debtor intends to pay WHLR its unpaid administrative rent and offer a cure of the unpaid pre-petition rent within a reasonably prompt time as determined by the Court following confirmation.

## V. COMPLIANCE WITH THE COURT'S PAYMENT ORDERS

24. The United States Trustee and WHLR state that the Debtor did not make the payments to WHLR required by the Agreed Interim Order (Doc. 134) and by ¶ 2 of the Court's Order of September 25, 2026 (Doc. 179) ($6,980.59 due September 30 and $4,444.53 due October 9, 2026), and did not make the September and October adequate protection payments to First United Bank & Trust under the Final Cash Collateral Order (Doc. 94). UST Obj. ¶¶ 9–10, 16; WHLR Obj. ¶¶ 6–9. Those statements are correct.

25. The Debtor recognizes that its failure to pay post-petition obligations when due is evidence bearing on feasibility, and that it reflects on the Debtor's compliance with this Court's orders. A cure of these arrears a condition of a request for a continuance of the confirmation hearing.

## VI. ADMINISTRATIVE MATTERS

26. The United States Trustee states that the Debtor's operating reports omit the information requested as Schedules E and F, which is particularly relevant because work in progress determines the Debtor's future income. UST Obj. ¶ 17; UST Obj. (Doc. 157) ¶ 11. The September report includes the Debtor's Work-in-Progress Report (Doc. 189).

27. The United States Trustee notes that the Debtor had not yet filed an amended ballot report. UST Obj. ¶ 8. The Debtor's Second Amended Ballot Report, tabulating all twelve ballots received, including the six received from Schedule G counterparties, was filed on October 25, 2026. (Doc. 195).

## VII. PROPOSED MODIFICATIONS, BENCHMARKS AND REMEDIES

28. If the Court is not prepared to find feasibility on the record before it, the Debtor asks the Court to continue the confirmation hearing to a date in late January 2027 on the following

conditions and to set November 23, 2026, as a deadline to cure all post-petition rent due and all arrears owed on adequate protection payments.

## VII. RESERVATION OF RIGHTS

29. Nothing in this response is an admission as to the allowance, amount, priority or characterization of any claim, or as to the existence of any default under any executory contract. The Debtor reserves all rights to present evidence and argument at the confirmation hearing and to supplement this response, and does not concede any ground of the Objections not expressly addressed above.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that the Court (i) overrule the Objections and confirm the Amended Plan; or, in the alternative, (ii) continue the confirmation hearing, and (iii) grant such other and further relief as is just and proper.

Dated: October 27, 2026

Respectfully submitted,

DAVIS KITCHEN & TILE, LLC,
Debtor and Debtor-in-Possession,
By Counsel

/s/ Ryan W. Johnson
Ryan W. Johnson (WVSB #14178)
JOHNSON LEGAL SERVICES, PLLC
1049 Market Street
Wheeling, WV 26003
(304) 212-4950
ryanjohnson@johnsonlegalservicespllc.com
Counsel for the Debtor and Debtor-in-Possession

**CERTIFICATE OF SERVICE**

I, Ryan W. Johnson, hereby certify that on October 27, 2026, I electronically filed the foregoing Debtor's Omnibus Response to the United States Trustee's Renewed and Amended Objection (Doc. 193) and the Supplemental Objection of the State of West Virginia (Doc. 194) to Confirmation of the Amended SBRA Plan, with Exhibit A, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties participating in the same.

/s/ Ryan W. Johnson
Ryan W. Johnson (WVSB #14178)
JOHNSON LEGAL SERVICES, PLLC
1049 Market Street
Wheeling, WV 26003
(304) 212-4950
ryanjohnson@johnsonlegalservicespllc.com
Counsel for the Debtor and Debtor-in-Possession

# EXHIBIT A

**Summary of Operating Results, Backlog, Plan Obligations**

Compiled from the Debtor's Monthly Operating Reports (Docs. 129, 147, 176, 189)

**EXHIBIT A — Schedule 1: Operating Results — Historical Operating Results (accrual and cash)**

*Sources: income statements and Official Form 425C reports in Docs. 77 (May), 129 (June), 147 (July), 176 (August), 189 (September); 2025 and Jan–Apr 2026 from Debtor workbooks dated 5/13/2026.*

| Line item | 2025 avg/mo | Jan–Apr 2026 avg/mo | May-26* | Jun-26 | Jul-26 | Aug-26 | Sep-26 | Jun–Sep total | Jun–Sep avg |
|---|---|---|---|---|---|---|---|---|---|
| **ACCRUAL — INCOME STATEMENT** | | | | | | | | | |
| Total operating income | $64,554 | $42,129 | $89,162 | $27,797 | $64,412 | $58,207 | $24,802 | $175,217 | $43,804 |
| Total direct expense | $31,481 | $29,512 | $33,167 | $17,016 | $27,196 | $29,384 | $32,756 | $106,352 | $26,588 |
| Gross profit | $33,073 | $12,617 | $55,995 | $10,781 | $37,216 | $28,823 | ($7,954) | $68,865 | $17,216 |
| Gross margin | 51.2% | 29.9% | 62.8% | 38.8% | 57.8% | 49.5% | (32.1%) | 39.3% | 39.3% |
| Total indirect expense (incl. rent) | $50,211 | $36,627 | $50,093 | $30,476 | $32,684 | $26,285 | $19,399 | $108,844 | $27,211 |
| of which rent | | | $5,319 | $5,319 | $5,409 | $5,319 | - | $16,046 | $4,011 |
| Indirect expense excluding rent | $50,211 | $36,627 | $44,774 | $25,158 | $27,275 | $20,966 | $19,399 | $92,798 | $23,200 |
| Net income (loss) | ($17,138) | ($24,011) | $5,903 | ($19,695) | $4,532 | $2,538 | ($27,353) | ($39,979) | ($9,995) |
| **CASH — FORM 425C PART 2** | | | | | | | | | |
| Opening cash (line 19) | | | ($382) | $7,019 | $2,663 | $5,144 | $5,257 | | |
| Cash receipts (line 20) | | | $104,203 | $36,973 | $51,034 | $70,616 | $36,610 | $195,232 | $48,808 |
| Cash disbursements (line 21) | | | $96,802 | $41,328 | $48,552 | $70,503 | $39,676 | $200,060 | $50,015 |
| Net cash flow (computed: line 20 − line 21) | | | $7,401 | ($4,355) | $2,481 | $112 | ($3,066) | ($4,828) | ($1,207) |
| Net cash flow as reported (line 22) | | | $7,401 | ($4,355) | $2,481 | $112 | $2,191 | $429 | $107 |
| Prior-month projected receipts (line 32, col. A) | | | - | $147,642 | $194,460 | $127,937 | $94,938 | $564,976 | $141,244 |
| Actual receipts as % of projection | | | | 25.0% | 26.2% | 55.2% | 38.6% | 34.6% | 34.6% |
| Payables incurred post-petition, unpaid (line 24) | | | $7,646 | $6,427 | $667 | $1,469 | $17,726 | | |
| Receivables (line 25) | | | $6,694 | - | $14,085 | $5,177 | $859 | | |

** May-26 includes 13 pre-petition days (petition filed 5/14/2026) and $10,000 of legal fees; excluded from the Jun–Sep averages.*

*Sep-26: Form 425C line 22 reports net cash flow of $2,190.83 and line 23 ending cash of $7,447.74, but line 20 − line 21 = $(3,066.08). The Sep-26 cash-flow statement reports ending cash of $(1,030.34). The September MOR should be amended.*

## EXHIBIT A — Schedule 2: Backlog — Conversion Schedule — Work-in-Progress Report dated 10/13/2026 (Doc. 189)

*Contract balances and materials to complete per the Debtor's Work-in-Progress Report dated 10/13/2026 (Doc. 189). Start month: 1 = October 2026; 0 = in process.*

| Job | Balance to collect | Materials to complete | Margin | Start / status | Debtor note | Start month (1=Oct-26; 0=in process) |
|---|---|---|---|---|---|---|
| Battin Laundry | $36,227 | $20,562 | $15,665 | 10/19/2026 | Anticipate Start 10/19 | 1 |
| Hyde Kitchen | $23,515 | $16,179 | $7,336 | 10/21/2026 | Working on a firm start date | 1 |
| Del Greco Bathrooms | $15,000 | $7,500 | $7,500 | 10/21/2026 | Working on a firm start date | 1 |
| Dittenhafer Bathroom | $15,910 | $6,440 | $9,470 | 10/26/2026 | Working on a firm start date | 1 |
| Dittenhafer Laundry | $8,002 | $5,222 | $2,780 | 10/26/2026 | Working on a firm start date | 1 |
| Sherfinski Bath | $12,785 | $5,508 | $7,277 | 10/26/2026 | Quoting Through RugRatz | 1 |
| Allen Basement Bar | $13,892 | $3,965 | $9,927 | 10/28/2026 | | 1 |
| Robinson Bath & Shower | $30,000 | $15,000 | $15,000 | 11/1/2026 | | 2 |
| Delardas Flooring | $8,308 | $4,047 | $4,261 | 11/2/2026 | On the Schedule | 2 |
| Corwin Kitchen | $60,979 | $45,000 | $15,979 | 11/9/2026 | | 2 |
| Miconi Bathroom | $12,024 | $8,598 | $3,426 | 11/14/2026 | Working on a firm start date | 2 |
| Maier Kitchen | $35,735 | $20,562 | $15,173 | 11/15/2026 | | 2 |
| Ramsey Shower | $5,450 | $4,632 | $818 | 11/16/2026 | | 2 |
| Goodwin Kitchen | $28,800 | $13,219 | $15,581 | 11/16/2026 | | 2 |
| Warren Kitchen | $11,146 | $12,000 | ($854) | 11/23/2026 | | 2 |
| Keough Kitchen | $23,406 | $18,621 | $4,785 | 11/30/2026 | | 2 |
| Rowan Kitchen | $22,188 | $19,143 | $3,045 | 11/30/2026 | | 2 |
| Schwalm Primary Bath | $11,511 | $7,546 | $3,965 | 12/12/2026 | | 3 |
| Schwalm Guest Bath | $7,906 | $4,042 | $3,864 | 12/12/2026 | | 3 |
| Jeruzal Upstairs and Kitchen | $2,325 | $1,234 | $1,091 | In Process | *considering cancelling the remainder | 0 |
| Murray Kitchen Cabinets | $10,702 | $10,233 | $469 | In Process | Countertop Template Complete | 0 |
| Agee Bath & Flooring | $7,686 | $1,844 | $5,842 | In Process | Next Draw is Completion | 0 |
| Jeruzal Basement Bath | $5,029 | $1,881 | $3,148 | In Process | Next draw is Ctop template | 0 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Schifano Master | $8,704 | $17,015 | ($8,311) | In Process | Next draw is Ctop template | 0 |
| Sellaro Master | $12,447 | $4,458 | $7,989 | In Process | Next Draw is Completion | 0 |
| Unnamed WIP line (per report) | $1,514 | - | $1,514 | In Process | Complete | 0 |
| Unnamed WIP line (per report) | $345 | $800 | ($455) | In Process | Next Draw is Completion | 0 |
| Sellaro Fridge Cabinet | $1,144 | $800 | $344 | In Process | Trying to receive a quote from Real W | 0 |
| Kessler Bath | $1,064 | $2,456 | ($1,392) | In Process | Next Draw is Completion | 0 |
| **Total** | **$433,744** | **$278,507** | **$155,237** | | | |